# IN THE COURT OF APPEALS OF IOWA

No. 15-1215
Filed October 14, 2015

**IN THE INTEREST OF C.E.,**
**Minor Child,**

**D.F., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals the juvenile court's orders adjudicating her daughter C.E. a child in need of assistance and removing the child from her custody and care. **AFFIRMED.**

Judy Johnson of Borseth Law Office, Altoona, for appellant mother.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, John P. Sarcone, County Attorney, and Amanda Johnson, Assistant County Attorney, for appellee State.

Jacob Mason of J.L. Mason Law, P.L.L.C., Ankeny, for appellee father.

Nicole Nolan of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

A mother appeals the juvenile court's orders adjudicating her daughter C.E. a child in need of assistance (CINA) and removing the child from her custody and care.

### I. Factual and Procedural Background

The child was born on October 9, 2013. Both parents had histories of drug use, including methamphetamine and marijuana.[1] The mother and father had an intermittent relationship spanning nearly a decade. The father also had a criminal history and had recently been released from incarceration when the mother became pregnant with C.E.

The mother had an older child, K.L., with a different father. Due to ongoing CINA proceedings relating to K.L., C.E.'s parents were both participating in services to maintain their sobriety. Eventually, C.E.'s father stopped participating in services. The mother reported her belief he had relapsed into methamphetamine use. Both children were allowed to remain in the mother's custody at that time. She was instructed not to permit contact between C.E.'s father and K.L.

It later came to light the mother had continued to have contact with the father and had permitted both K.L. and C.E. to have contact with him as well. The mother admitted to an ongoing relationship with the father. The court issued a temporary removal order placing C.E. with the Iowa Department of Human

---

[1] The mother claims—and the State does not dispute—she has been sober since 2012.

Services (DHS) on December 17, 2014.[2]  The State filed a CINA petition as to C.E. on December 18.

A two-day removal hearing took place on December 19, 2014, and January 16, 2015.  At the hearing, evidence was presented that the mother had left C.E. in the care of the paternal grandmother and allowed the grandmother to supervise visits between the father and the child.  The grandmother admitted to regular use of marijuana in her testimony at the removal hearing.  On January 28, 2015, the juvenile court issued its removal order, confirming the terms of its temporary removal order.[3]

On February 19, 2015, the juvenile court held an adjudication hearing.  In its adjudication order dated April 6, 2015, it incorporated the findings of fact made in its removal order and found the State had made reasonable efforts to eliminate or prevent the need for adjudication and removal from the mother's home.  It concluded clear and convincing evidence supported adjudication under Iowa Code sections 232.2(6)(c)(2) and .2(6)(n) (2015).

The dispositional hearing took place on April 8, May 27, and June 11, 2015.  The father refused to participate in services throughout these proceedings, including drug screenings.  In its July 9, 2015 disposition order, the juvenile court found the mother continued her relationship with the father in

---

[2] K.L. was also removed from his mother's care.

[3] The court rejected the mother's assertions that she knew the father could not have contact with K.L. but that she did not know the father could not have contact with C.E. The mother testified she knew exposure to the father was the reason for K.L.'s removal. She further testified she understood the determining factor in K.L.'s continued removal was her ongoing relationship with C.E.'s father.

contravention of the court's admonishments.[4] The mother argued she had made no in-person contact with the father. However, the court noted even while the father had been incarcerated, the mother continued to have regular contact with him by mail and telephone. She had recently purchased a zoo pass for C.E. and included the father's name on the pass so the father could take C.E. to the zoo in the future. The court expressly found the mother lacked credibility regarding her relationship with the father, noting five specific occasions on which the mother lied to the court. The court confirmed its adjudication and removal orders, finding:

> [The father] has not maintained a working phone number, has not established a consistent place of residence, and admitted he is not in compliance with probation expectations, has not maintained any substantial length of sobriety outside of a court ordered placement. Mother continues to put her own sobriety at risk through her continued relationship with Father. She has been provided services for years to help her understand the ongoing safety concerns of maintaining close relationships with unsafe or inappropriate persons. Although Mother has long claimed she will set appropriate and safe boundaries between the child and Father and others, she has historically failed to do so.

The mother appeals from the juvenile court's dispositional order.

**II. Standard of Review**

We review de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "We review both the facts and the law, and we adjudicate rights anew." *In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994). We give weight to the factual determinations of the juvenile court—particularly its credibility determinations—but we are not

---

[4] Throughout the CINA proceedings, the juvenile court repeatedly noted the mother's ongoing "relationships with inappropriate persons"—i.e. C.E.'s father and paternal grandmother. The mother on multiple occasions professed an understanding that she was not to be in contact with the father. She would nevertheless make contact with him. Each time she did so, she would explain to the DHS or the court why that contact was inconsequential.

bound by them. *See id.* Our primary consideration is the best interests of the child. *See J.S.*, 846 N.W.2d at 40; *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001).

**III. Discussion**

The mother raises three issues for our consideration.[5]

*A. Statutory Grounds for Adjudication* First, she claims C.E. does not meet the definitional requirements of Iowa Code sections 232.2(6)(c)(2) and .2(6)(n), contrary to the juvenile court's confirmation of adjudication in its dispositional order. Section 232.2(6)(c)(2) defines a child in need of assistance as one "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." Section 232.2(6)(n) defines a child in need of assistance as one "[w]hose parent's . . . mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care." The State bears the burden to prove by clear and convincing evidence that these definitions are applicable to C.E. *See* Iowa Code § 232.96(2); *J.S.*, 846 N.W.2d at 41. Clear and convincing evidence is evidence that "leaves no serious or substantial doubt about the correctness of the conclusions drawn from it." *See In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002) (citation and internal quotation marks omitted).

We agree with the juvenile court that the State has satisfied its burden. As the juvenile court noted, the mother "continues to lack insight into how

---

[5] The mother has made two additional claims challenging aspects of the juvenile court's December 17, 2014 temporary removal order and its January 28, 2015 removal order. However, the mother failed to appeal from these orders directly, and her claims are now moot in light of the custodial provisions of the juvenile court's CINA and dispositional order. *See A.M.H.*, 516 N.W.2d at 871.

associating with addicts who are actively using illegal substances places her at risk to relapse." Her clearly manifested intention to continue her relationship with the father also puts the child imminently likely to suffer direct harm or negligent care from the father or the paternal grandmother.

The mother argues there is no evidence the father or paternal grandmother were under the influence of substances when in contact with C.E. She also argues there is no evidence C.E. has been harmed as a result of her contact with the father and grandmother. Neither of these assertions undermines the fact that the child continues to be at risk due to the mother's pattern of delegating the child's care to the father and grandmother.

We find the mother's inability to separate her children from C.E.'s father constitutes a failure to exercise a reasonable degree of care in supervising C.E. C.E. is imminently likely to suffer the harmful effects of that failure—i.e. negative effects upon her "physical, mental, or social well-being." *See J.S.*, 846 N.W.2d at 42. Iowa Code section 232.2(6)(c)(2) is satisfied. We therefore affirm the juvenile court's confirmation of C.E.'s CINA adjudication in the dispositional order. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995) ("We affirm . . . if one ground, properly urged, exists to support the decision.").[6]

*B. Reasonable Efforts* The mother contests the juvenile court's finding that "[r]easonable efforts have been made to eliminate the need for the

---

[6] It may be necessary to consider the multiple grounds for a juvenile court's CINA adjudication if the different grounds have collateral consequences—e.g., if the different grounds for adjudication relied upon could serve as bases for future termination-of-parental-rights proceedings on distinct statutory grounds. *See J.S.*, 846 N.W.2d at 41. In this case, however, the mother has not argued any such consequences would result from a reliance on Iowa Code section 232.2(6)(n) as opposed to section 232.2(6)(c)(2). We do not find any such consequence arising from our case law or termination provisions. *See* Iowa Code § 232.116(1).

child's removal from the home."[7] *See* Iowa Code § 232.102(7) ("[DHS] shall make every reasonable effort to return the child to the child's home as quickly as possible . . . ."); *see also In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). She contends her allocation of three weekly visitations was not enough to facilitate reunification. We disagree.

The mother has been offered visitation, substance abuse evaluation and treatment, FSRP (family safety, risk, and permanency) services, therapy, BHIS (behavioral health intervention services), transportation assistance, and family team meetings. She has participated in all recommended services and has remained sober during the pendency of this case. However, the determining factor on the matter of custody was and remains the mother's ongoing relationships with drug abusers. We find the State's efforts to reunify the mother and child are reasonable. We also find the mother's participation in services offered would be sufficient to support reunification. Unfortunately, she remains unwilling to shield the child from the father, making reunification impossible at this time. The services offered to the mother nevertheless constitute reasonable efforts by the State to support reunification. We affirm the finding of reasonable efforts in the juvenile court's dispositional order.

---

[7] The State argues the mother has not preserved error on this issue. The mother filed a motion for reasonable efforts before the adjudication hearing requesting additional services. The juvenile court did not rule on the requests made by the mother in its adjudication order, but it found that reasonable services had been offered to her. The mother did not file a rule 1.904(2) motion to enlarge or amend. We nevertheless reach the merits of the mother's claim based on her request for additional services. *See In re S.J.*, 620 N.W.2d 522, 524 (Iowa Ct. App. 2000); *see also In re S.P.*, No. 15-0406, 2015 WL 3626418, at *2 (Iowa Ct. App. June 10, 2015); *In re D.N.*, No. 99-1248, 2000 WL 72095, at *2 (Iowa Ct. App. Jan. 26, 2000).

*C. Least Restrictive Disposition*   The mother lastly argues the juvenile court's dispositional order is contrary to Iowa Code section 232.99(4), which requires the court to "make the least restrictive disposition appropriate considering all the circumstances of the case."  The mother argues, "Continued placement of C.E. outside of [the mother's] home was not necessary.  The Court could have returned C.E. to [the mother] without further risk of adjudicatory harm."  The mother's conclusory statement does not persuade us that continued removal of the child was not necessary.  The mother has consistently argued throughout the proceedings that leaving the child in the care of the father and the paternal grandmother was not problematic, which reflects the mother's lack of awareness of the effect her relationship with these individuals has on her child's case.  We find the juvenile court's continued placement of the child with DHS was proper.  *See* Iowa Code §§ 232.99, .102.  On our de novo review and in consideration of all the circumstances of this case, we affirm the dispositional order regarding custody of the child.

## IV. Conclusion

We affirm the juvenile court's findings that C.E. meets the definition of a child in need of assistance pursuant to Iowa Code sections 232.2(6)(c)(2).  We affirm its findings that the State made reasonable efforts to reunify the family.  We affirm its custody order for family foster care through DHS.

**AFFIRMED.**