# IN THE COURT OF APPEALS OF IOWA

No. 15-1105
Filed October 28, 2015

**IN THE INTEREST OF S.V., D.V., and
D.B.,**
    **Minor Children,**

**S.V., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to three children. **AFFIRMED**.

Taryn Purcell of Blair & Fitzsimmons, Dubuque, for mother.

Thomas J. Miller, Attorney General, Kathryn S. Miller-Todd and Janet Hoffman, Assistant Attorneys General, Ralph Potter, County Attorney, and Joshua Vander Ploeg, Assistant County Attorney, for appellee.

Matthew Boleyn of Reynolds & Kenline, Dubuque, for father D.B.

Dustin Baker of Baker Law, Dubuque, for father C.P.

Colista Anglese of Hammer, Simon & Jensen, East Dubuque, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J, and Vogel and Tabor, JJ.

**TABOR, Judge.**

A mother appeals the juvenile court order terminating her parental rights to three children: seven-year-old D.V., three-year-old S.V., and one-year-old D.B.[1] She does not contest the statutory grounds for termination. Instead she asserts the juvenile court should have refused to terminate under Iowa Code section 232.116(3)(c) (2013) based on her bond with the children. Alternatively, she contends the court should have given her an additional six months to secure a living arrangement suitable for the family.

The mother's strong commitment to her children is obvious from our review of the record.[2] But the mother has not demonstrated her ability to provide a stable home for them with the necessary consistency over the past three years of involvement by the Department of Human Services (DHS). We conclude the continued uncertainty of the children's future is more detrimental than the prospect of severing the legal relationship with their mother. We also conclude that reunification would not be possible even after an additional six months.

The history of the family is relevant to the questions before us. The mother was raised by her grandmother until she was thirteen years old. The mother became pregnant with her first child at age sixteen and dropped out of high school when she was pregnant with her second child. She did not complete a GED.

---

[1] The juvenile court also terminated the parental rights of each child's father or putative father. The fathers' rights are not an issue in this appeal.

[2] We review termination proceedings de novo. *In re A.M.*, 843 N .W.2d 100, 110 (Iowa 2014). When so doing, "[w]e review both the facts and the law, and we adjudicate rights anew." *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001) (internal quotation marks omitted).

The family came to DHS attention in July 2012 when S.V. tested positive for methamphetamine. The mother acknowledged using drugs and leaving S.V. and D.V. in the care of an active methamphetamine addict. The mother participated in voluntary services with the DHS for one year.

The mother's situation was very precarious for that year. Drug use was a continuing concern. She moved out of an apartment where she was living with the children because it had no electricity. The family lived in a tent outside the home of the children's grandfather while the mother searched for a new apartment. The children again tested positive for drugs in July 2013. The DHS removed the children and adjudicated them as children in need of assistance (CINA) in September 2013.

The mother left another apartment after failing to pay rent and entered the Maria House in January 2014. The children were returned to her care while she lived there. But the mother was forced to leave the Maria House when she did not follow the rules. D.B. was born in June 2014. The two older children were removed again in September 2014. D.B. was adjudicated CINA in October 2014 and removed as well.

After this removal, the mother found new motivation to reunite with her children. She made strides toward addressing her substance abuse issues, though she did test positive for marijuana in January 2015. She also was working three part-time jobs and obtained stable housing.

In recognition of the mother's progress, the DHS granted extended visitation—six hours a day, four days a week. The DHS report stated: "We

wanted to see that [the mother] could maintain her employment and apartment while still getting the kids to and from school and daycare and meeting all of their needs."

Perhaps not surprisingly because of the overwhelming demands on her time, the mother failed to meet the DHS expectations. She lost one of her jobs because she was unable to set her work schedule around the long visitations. The mother did not take the children to day care, because she wanted to maximize her time with them and because they cried when she left them. As a result, she lost her remaining jobs and then her apartment in April 2015. The DHS cut back her visitations to three hours, one day a week.

The State filed its petition to terminate her parental rights on May 6, 2015, and the court held a hearing on June 3. The mother did not challenge the grounds for termination. Instead, she asked for additional time under Iowa Code sections 232.104(2)(b) and 232.117(5). She also claimed her bond with the children was strong enough that termination would be detrimental to them under section 232.116(3)(c). On June 12, 2015, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) as to D.V. and S.V and (h) as to D.B. The mother now appeals, raising the same arguments she did in the juvenile court. We find termination is appropriate.

### A. The Closeness of the Parent-Child Relationship

The mother invokes Iowa Code section 232.116(3)(c) as a reason not to terminate her parental rights. Section 232.116(3)(c) provides, "The court need not terminate the relationship between the parent and child if the court finds . . .

[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." This factor is permissive, not mandatory. *A.M.*, 843 N.W.2d at 100.

It is clear from the record that the mother loves her children and enjoys a strong connection to them, especially the older two children who have spent more time in her care. But their bond does not outweigh the children's need for permanency. The mother has been involved with DHS for more than three years. While she has made progress with her substance abuse issues and parenting skills, she continues to struggle with balancing the needs of the children with maintaining employment and stable housing. Her children have waited long enough for her to become a responsible parent. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).

### B. Continued Foster Care Placement

The mother argues "the only setback" that prevented the children from being returned to her care was her inability to maintain a stable residence. She contends she can remedy this situation with a six-month extension. "[T]o continue placement for six months, the statute requires the court to make a determination the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

At the time of the termination hearing, the mother was staying with the father of her unborn child because she did not have her own apartment. She testified that a few days before the hearing she was hired at a local Wendy's where she could work on a part-time basis. She testified she was actively

looking for an apartment or, alternatively, could move in with her grandmother in Davenport.[3]

After considering the record as a whole, we find the mother would not be able to remedy the need for removal if granted an additional six months. The mother has had a difficult time maintaining a stable residence. She has a driver's license, but no transportation of her own. She started a part-time job at a fast-food restaurant, but only on the eve of the termination hearing. She also was also pregnant with her fourth child, which will make it more difficult for her to continue to work and save for a suitable apartment. Her backup plan of living with her grandmother was not revealed until the hearing and despite her struggle to maintain stable housing she had not sought approval for this contingency from the DHS.

Meanwhile, the children have found a stable environment in their foster home. The foster family has indicated a willingness to adopt all three children. The record does not support postponing the children's chance at permanency for another six months.

**AFFIRMED.**

---

[3] The grandmother testified she had plenty of room and the mother's family was welcome to stay with her. Earlier in the case, the DHS looked into the grandmother as a possible placement for the children, but the grandmother was only able to care for the older two children.