## IN THE COURT OF APPEALS OF IOWA

No. 16-0444
Filed May 11, 2016

**IN THE INTEREST OF J.W., S.W., Z.W., AND T.W.,**
**Minor Children,**

**L.C., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mary L. Timko, Associate Juvenile Judge.

A mother challenges the termination of her parental rights to four children. **AFFIRMED.**

Zachary S. Hindman of Mayne, Arneson, Hindman, Hisey & Daane, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Molly Vakulskas Joly of Vakulskas Law Firm P.C., Sioux City, for minor children.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

The children impacted by this appeal—J.W., S.W., Z.W. and T.W.—range in age from one to six years. Their mother challenges the juvenile court's order terminating her parental rights. She asks for an additional six months to work toward reunification of the family and contends severing her rights now is not in the children's best interests. In the fall of 2015, the juvenile court granted the mother additional time to resolve the conditions that led to removal of the children. Given the mother's substance abuse, homelessness, and mental-health history, we do not find that a second chance at reunification would benefit the children.

## I.     Facts and Prior Proceedings

The juvenile court opened its findings of facts by noting the mother and father[1] "are no strangers to this court." The court described the circumstances leading to the April 2009 termination of parental rights to their older son, B.W., due to the parents' involvement with illegal drugs and drug users. The court further found that between May 2009 and July 2014, the parents and their growing family[2] "roamed from place to place, living with multiple people who used or sold drugs."

In July 2014 and again in June 2015, the family faced investigations by the child protective services unit of the Iowa Department of Human Services (DHS). On the first occasion, the father admitted using methamphetamine. On the

---

[1] The court order at issue also terminated the father's parental rights to J.W., S.W., Z.W. and T.W, but he is not a party to this appeal.
[2] T.W. was born in 2009, Z.W. was born in 2010, S.W. was born in 2013, and J.W. was born in 2014.

second occasion, the young children were allowed to play outside unsupervised. The house where the family was living with several unrelated adults had no electricity or running water for more than one month. Because the living conditions were unsanitary and unsafe, the DHS removed the four children. The court adjudicated them as children in need of assistance (CINA) in July 2015.

The Family Safety Risk and Permanency (FSRP) worker tried to help the mother apply for housing assistance, but the mother did not follow up. From July to December 2015, she remained homeless, staying with random acquaintances. In addition to housing challenges, the mother struggled with mental-health and substance-abuse issues. She had been diagnosed with attention deficit hyperactivity disorder (ADHD) and bipolar disorder. She also received Social Security disability for her cognitive disability. In addition, the mother abused alcohol and methamphetamine during the CINA case.

Following a dispositional hearing, the juvenile court issued an order on October 1, 2015, granting the parents additional time to work toward reunification. The court was candid about the parents' less-than-diligent efforts to resolve the problems that led to their children's removal, commenting they "have shown no progress since this family came to the court's attention, except for their most recent efforts to participate in chemical-dependency evaluations just a week ago." The court admonished the parents to follow through "100% with expectations, requests, and services" as established by the DHS. But even after that reprieve, the mother did not commit to regular participation in services nor did she consistently attend visitation, much to the disappointment of the children.

Some of the children have special needs. T.W. is taking medication for ADHD. Both T.W. and Z.W. receive therapy to address negative behaviors. J.W. also started to act out by pulling out his hair, as well as kicking and hitting when he is upset.

On December 30, 2015, the State filed a petition for termination of parental rights. About three weeks after that petition was filed, the mother obtained a substance-abuse evaluation. She told the evaluator her drug of choice was methamphetamine and her last use was in November 2015. She also reported abusing alcohol. She told the evaluator she was motivated to change her substance-abuse patterns because she wanted to "get her children back from DHS." The evaluator opined she was in the "pre-contemplation stage of change."

On February 26, 2016, the court held a termination hearing during which the DHS worker and the mother provided testimony. The worker described the visitations as "very chaotic" and opined the mother needed to improve her parenting skills. The mother testified she was not able to take the antipsychotic medication prescribed to her because she recently learned she was pregnant with her sixth child. The mother also acknowledged she was homeless at the time of the hearing. The mother asked for six additional months to look for housing options, and testified: "I believe I can take care of my kids." At the close of the hearing, the children's guardian ad litem endorsed the State's petition in support of termination.

The juvenile court terminated the mother's parental rights based on Iowa Code sections 232.116(1)(d), (g), (h) and (*l*). The mother timely filed an appeal.

## II.     Standard of Review

We review termination orders de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  De novo review requires us to evaluate both the facts and the law, and then adjudicate rights anew.  *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). We are not bound by the juvenile court's findings of fact, but we give them weight, especially when assessing witness credibility.  *A.M.*, 843 N.W.2d at 110.

## III.     Analysis

On appeal, the mother does not challenge the statutory grounds for termination.  In the absence of a challenge, the grounds for termination remain undisturbed.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

***Additional Six Months****.*  The mother instead seeks to delay permanency for an additional six months under Iowa Code section 232.104(2)(b).[3]  She alleges each of the concerns noted by the juvenile court in support of the termination order "are likely to be remedied in an additional six months such that the children will at that time be able to return to [her] care."  Specifically, she asserts she will be able to obtain stable and appropriate housing, will address her substance-abuse and mental-health problems, will comply with visitation, and will improve her parenting skills.  After reviewing the record anew, we find the mother's ambitious agenda is unrealistic.

---

[3] Section 232.104(2)(b) reads in relevant part:
> [T]o continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

A parent's past performance gives us a glimpse into what we can expect for the quality of future care that parent is able and willing to provide the children. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). The mother's past performance in this case is not reassuring. She has only stepped up her efforts to obtain treatment for substance abuse on the eve of termination. She has untreated mental-health difficulties and has been unable to secure stable housing. The juvenile court's insistence on full compliance with DHS services after the October 2015 extension did not impress upon her the urgency of the situation.

> The juvenile court reasoned as follows:
>
> There are no further services which can be provided that will correct the circumstances which led to the adjudication of their children. [The parents] continue to lack the ability or willingness to respond to services and an additional period of rehabilitation would not correct the situation. The children are in need of permanency now, not at some point in the future. They have waited long enough for their parents to make them a priority. To grant an additional six months is not in the children's best interests.

We concur in that rationale.

***Best Interests of the Children.*** The mother argues, even if she is not granted an additional six months to reunify with her four children, it is in their best interests for her to retain her parental rights. We disagree.

In deciding what is in the best interests of J.W., S.W., Z.W. and T.W., we give primary consideration to their safety; the best placement for furthering their long-term nurturing and growth; and to their physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2). We note the record showed

the children were experiencing negative behaviors tied to the uncertainty of their ongoing interactions with their parents.

The juvenile court held that the children's long-term growth would be best served by terminating "the parent-child relationships so that they will have the opportunity to grow and mature in a safe, healthy and stimulating environment." The court determined the children were adoptable and had made great strides while in family foster care. The juvenile court concluded: "These children deserve the opportunity to establish permanency and stability in their lives. It is in the children's best interests that the impediments to their forming new family relationships should be swept away."

After reviewing the entire record, we agree with the juvenile court's cogent sentiments.

**AFFIRMED.**