# IN THE COURT OF APPEALS OF IOWA

No. 17-0145
Filed August 2, 2017

**IN THE INTEREST OF D.R., R.R., O.R., and G.S.,**
**Minor Children,**

**M.H., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan C. Cox, District Associate Judge.

The mother appeals from the dispositional order confirming the adjudication of her children as in need of assistance and placing them outside of her care and custody. **AFFIRMED.**

Jeremy M. Evans of Sporer & Flanagan, P.L.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kim S. Ayotte of Youth Law Center, Des Moines, guardian ad litem for minor children.

Brent M. Pattison of Drake Legal Clinic, Des Moines, attorney for minor child G.S.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

The mother appeals from the dispositional order confirming the children as in need of assistance (CINA) and maintaining the children outside of her care and custody. She claims the juvenile court's dispositional order placing the children in foster care[1] was not the least restrictive means available. Specifically, she argues the court should have returned the children to her care and custody because the reasons for their removal had been resolved. The mother also argues the State failed to make reasonable efforts toward reunification.

**I. Background Facts and Proceedings.**

This mother has been involved with the Iowa Department of Human Services (DHS) a number of times in the past, both for these children and for an older child who is now an adult. Most recently, in 2014, D.R. and O.R. were removed from the mother's care and adjudicated CINA after the mother tested positive for marijuana and methamphetamine; O.R. and D.R. also tested positive for THC.[2] The mother was able to work through her issues with substance abuse and have the children returned to her care.

The present involvement began in June 2016, when it was reported that the mother was smoking marijuana in the presence of D.R., O.R., and R.R.— then five, four, and one, respectively. It was also alleged the mother was breastfeeding R.R. after smoking marijuana. When DHS interviewed D.R., he

---

[1] Only two of the four children were placed in foster care. D.R. and R.R. were in the care of their father and had been since August 2016—before the children were adjudicated children in need of assistance—when the father was awarded physical care by the court in an unrelated family law dispute.

[2] R.R. was not yet born. G.S. and the mother's oldest child—now an adult and not at issue in this appeal—did not come to live with the mother until after the previous CINA case closed.

reported his mother smoked cigarettes outside the home that looked different from the cigarettes she smoked inside the home. He also reported his mother smoked out of a purple tube, and that he and his younger siblings were usually alone inside the home while she did so.

DHS was unable to make contact with the mother until mid-August. Once the social worker made contact, the mother admitted she had smoked marijuana within the previous two months, but she denied breastfeeding R.R. afterward and she stated she had not used methamphetamine since the previous DHS case closed. The mother agreed to participate in a drug test the following Monday.

In the meantime, the mother took D.R. and R.R. to their father.[3] The family court had awarded the father physical care of the children on August 1, but the mother had refused to turn the children over to their father. After she did so, on August 22, the father called DHS and reported the mother seemed to be "tweaking." He explained she was talking rapidly and moving her jaw around. He believed the mother was high on methamphetamine.

As of October 17, the mother had yet to participate in drug testing, and she refused to participate in voluntary services. The State filed petitions alleging D.R., R.R., O.R., and G.S. were CINA, pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2016).

At the pretrial conference on October 31, all parties agreed the mother would complete a hair-stat test and have a drug patch placed on her that day. The mother again failed to do so, and O.R. and G.S. were removed from the mother's care on November 9. In the temporary removal order, the court stated

---

[3] O.R. and G.S. have different fathers and were not part of the custody order.

custody could not remain with the mother because "the mother's unresolved drug abuse issues and her refusal to provide a drug screen prevent[] her from safely caring for these children. The mother exhibits signs that she abuses drugs but she will not engage in services and she is not maintaining contact with professionals."

After the children were removed, the mother provided a drug screen that was positive for marijuana. She continued to refuse to have a drug patch placed on her.

The mother completed a substance-abuse evaluation on November 17. She reported she used marijuana two to three times per week, with her last use being the day before the evaluation. She reported consuming alcohol five times in the previous twelve months, and she denied using any other substance since 2014. According to the evaluation, the "[s]taff recommended no treatment. [The mother] reported that she does not believe she needs treatment."

On November 21, the mother was arrested for assault causing bodily injury. At the time, she was intoxicated and aggravated over losing her children. According to the police report, the mother was walking near her residence "engaging in several altercations with other residents" before she "physically attacked" the victim "by striking her in the face and upper body," pulling her hair and throwing her to the ground. It was noted at the next team meeting that the mother has a history of turning to alcohol in times of stress. DHS noted a safety plan should be put in place in case the mother felt the urge to drink again, and the mother indicated she would resume individual therapy and seek support through her church in order to maintain sobriety.

The CINA hearing took place on December 8 and 9. According to the juvenile court's written findings, the mother testified on both days of the hearing. On the first, "[w]hile testifying, she talked very quickly and repeatedly moved her jaw-consistent with [the father's] description of the mother tweaking on meth." On the second day, the mother "did not talk quickly and did not move her jaw." The mother denied ever smoking out of a purple tube. Following the hearing, the court confirmed the out-of-home placement of O.R. and G.S. and adjudicated all four children CINA pursuant to section 232.2(6)(c)(2) and (n).

As part of the CINA order, the court ordered the mother "to immediately cooperate with DHS for drug patch testing." The mother did have a drug patch placed on her, but she did not do it until four days later. The test results came back negative.

The disposition proceedings took place on January 6 and 9, 2017. The mother testified the issue with her jaw popping that the court had identified in the CINA hearing was a result of her anxiety; she denied it had anything to do with the use of illegal substances. She stated she would be able to provide medical documentation about the condition; she did not bring it with her to the hearing. The mother also testified that she did not put the drug patch on the day she was ordered to do so because she was "angry" and "frustrated." When asked if she had used any illegal substances lately, the mother admitted she had "a couple hits of weed" "within the last week." The mother also testified about missing visits with the children, including the two most recent scheduled visits.

Following the hearing, the court confirmed the CINA adjudication of the children and found G.S. and O.R. should remain in out-of-home placement "due

to the mother's unresolved substance abuse and mental health issues." The court ordered that the mother should receive transportation assistance and DHS needed to establish a phone call schedule and sibling visits.

The mother appeals.

## II. Standard of Review

We review child-in-need-of-assistance proceedings de novo. *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). "Although we give weight to the juvenile court's factual findings, we are not bound by them." *Id.* Our primary concern is the best interests of the children. *Id.*

## III. Discussion

The mother argues the juvenile court's dispositional order placing the children in foster care was not the least restrictive means available. Specifically, she argues the court should have returned the children to her care and custody. Although the mother does not specify, we note that her argument only applies to G.S. and O.R., as the other two children were in the care of their father pursuant to an unrelated custody determination made by the district court before the children were adjudicated CINA.

The mother maintains the children should have been returned to her care because the issues that led to removal had been resolved and there was no evidence to suggest thaechildren would suffer adjudicatory harm if they were returned to her care. We disagree. Iowa Code section 232.2(6)(n) provides that a parent's drug or alcohol abuse that results in the child not receiving adequate care is an adjudicatory harm. Here, the mother has a history—according to her five-year-old child—of leaving her young children in the home while she smokes

marijuana outside. According to her own testimony, the mother has continued to smoke marijuana since the children were removed, including within one week of the disposition hearing and the day before her drug-abuse evaluation. She did not testify about an intention to quit, and she has not taken any steps toward doing so. Additionally, we note that DHS and the juvenile court had concerns the mother was using methamphetamine again. The mother points to the results of both of her drug tests, which were negative for the substance, as proof the concerns were unfounded, but we note the mother only tested twice out of the handful of the times she was asked and never within the time period she was asked to do so. Similarly, although the mother's use of alcohol was not an initial reason for DHS's involvement with the family, in considering whether the children could be returned without risk of further adjudicatory harm, we note the mother's intoxicated state during her arrest for assault causing bodily injury and her own statements to caseworkers that she has a history of turning to alcohol during times of stress.

We also note that after the children were removed, it was learned that a number of the children had dental issues that needed to be addressed, including rotting teeth that required surgery. Even after the children were removed, the mother was expected to make the necessary appointments for the children. However, at the time of the disposition hearing, the mother had not yet done so, and she was being asked to sign releases so the foster parents could take over the medical care. Iowa Code section 232.2(6)(e) provides a child in "need of medical treatment to cure, alleviate, or prevent serious physical injury or illness and whose parent, guardian, or custodian is unwilling or unable to provide such

treatment" suffers adjudicatory harm. While this was not the adjudicatory harm that originally led to the children's removal, "[t]he adjudicatory harm requiring continued removal does not need to be the harm that necessitated the initial removal from the home." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

Because the children were still at risk of adjudicatory harms, we agree with the juvenile court that out-of-home placement was still necessary at the time of the disposition hearing.

The mother also argues the State failed to make reasonable efforts to reunify her with her children. Specifically, she complains she should have been receiving more visits with the children. The mother states that she made the request for additional visits at previous hearings. The mother did not make a request for more visits at the disposition hearing, and we do not have a record of the CINA hearing. Assuming the issue is preserved, we cannot say the State has failed in its reasonable-efforts mandate. Although DHS had scheduled only once-weekly visits between the children and the mother, the mother had struggled to consistently attend those. At the disposition hearing, she testified she had missed the two most recent visits. She stated it was due to a transportation issue, and the court ordered DHS to help assist with transportation so the mother could be more consistent in the future. Additionally, the court ordered a daily call schedule to be established so the mother could have more contact with children. We note the mother was receiving more visits previously because the foster parents initially agreed to supervise a weekly visit between the children and the mother, but they had revoked their offer to do so after the mother cancelled a visit approximately thirty minutes before it was due to start

because her oldest, adult daughter could not attend. When the foster parents explained how excited the children were for the visit, the mother responded, "If [other daughter] can't be there, it's not worth seeing them." On these facts, we conclude the State has made reasonable efforts.

We affirm the out-of-home placement of the children.

**AFFIRMED.**