In the Interest of K.N., Minor Child,

Robert J. Phelps, Guardian
ad litem, Appellant.

No. 00–1022.

Supreme Court of Iowa.

April 25, 2001.

**732**

Robert J. Phelps, Davenport, guardian ad litem for K.N., appellant.

Thomas J. Miller, Attorney General, Tabitha Gardner, Assistant Attorney General, and Gerda Lane, Assistant County Attorney, for appellee-State.

John E. Molyneaux, Davenport, for K.N.

Cynthia Z. Taylor and Cristina Frederick of Zamora, Taylor, Clark, Alexander, Woods and Frederick, Davenport, for appellee-parents, T.N. and J.N.

CADY, Justice.

In this appeal we must decide if the juvenile court may dismiss a child in need of assistance (CINA) action based on the finding that the services offered to the child provided no benefit and that the additional expenditure of public funds and resources would not benefit the child in the future. The guardian ad litem of the child claims the juvenile court utilized inappropriate criteria and abused its authority in dismissing the CINA case. We reverse and remand for further proceedings.

**I. Background Facts and Proceedings.**

K.N. and her sister J.P. were adjudged children in need of assistance in 1997. Since that time, the Department of Human Services (DHS) has provided a variety of services to the children and their parents. The children were removed from their parents' home at various times and placed in a variety of treatment and placement facilities.

Both the parents and the children have serious substance abuse problems. Sadly, K.N. began using drugs at a very early age. Repeated drug treatment efforts have failed. At times, the children appeared to progress in treatment facilities and other placements, particularly K.N., but they would eventually regress after returning to their parents.

A review hearing was held on April 24, 2000. At the time, K.N. was fourteen years old and J.P. was seventeen years old. J.P. was in a residential facility and was present at the hearing. K.N., however, had run away from her placement. The DHS believed she was outside of our state's borders. She was not present at the hearing.

The State recommended residential placement for both J.P. and K.N. J.P.'s attorney, her parents, and her guardian ad litem requested the action against J.P. be dismissed based on her age, lack of progress in response to services, and resistance to further treatment and placement.

K.N.'s attorney recommended K.N. be permitted to return to her parents. K.N.'s parents and guardian ad litem both agreed with the State that a protective facility was the more appropriate disposition.

The juvenile court dismissed the actions against both J.P. and K.N. It observed that service providers had "expended a tremendous amount of money for very little gain" realized by the children and the parents during the three years of services, and did not believe it was appropriate "to spend any more." The court also reasoned

that the continuation of services was not likely to result in success.

The guardian ad litem filed a Rule 179(b) motion requesting the juvenile court to reconsider its decision to dismiss K.N.'s CINA case. The guardian ad litem did not contest the dismissal of J.P.'s CINA case. The guardian ad litem argued that at fourteen years of age, K.N. was too young for the juvenile system to abandon, and that, unlike J.P., K.N. was amenable to services. At the very least, the guardian ad litem asserted, the juvenile court should retain jurisdiction of K.N. simply to protect her.

In denying the motion to reconsider, the juvenile court advanced the same reasons as delineated in its order dismissing J.P. and K.N.'s CINA cases. The court again noted the DHS had already expended a considerable amount of monetary and remedial resources on K.N., to little or no avail. Believing these past expenditures had not impacted K.N., the court refused to spend any "further public monies" on K.N., even though K.N. was still "at risk." The court concluded that "[t]he money and resources are better invested in children and families that we can make a beneficial impact."

The guardian ad litem appeals. He contends the juvenile court abused its discretion and utilized inappropriate criteria in dismissing K.N.'s CINA case.

## II. Scope of Review.

■ Our review of child in need of assistance proceedings is de novo. *In re H.G.*, 601 N.W.2d 84, 85 (Iowa 1999); *In re E.H. III,* 578 N.W.2d 243, 248 (Iowa 1998); *In re N.C.,* 551 N.W.2d 872, 872 (Iowa 1996). "We review 'both the facts and the law, and we adjudicate rights anew.'" *H.G.,* 601 N.W.2d at 85 (quoting *In re A.M.H.,* 516 N.W.2d 867, 870 (Iowa 1994) (citation omitted)). Although we give

weight to the juvenile court's factual findings, we are not bound by them. *E.H. III,* 578 N.W.2d at 248; *A.M.H.,* 516 N.W.2d at 870. As in all juvenile proceedings, our fundamental concern is the best interests of the child. *E.H. III,* 578 N.W.2d at 248; *N.C.,* 551 N.W.2d at 872.

## III. Termination of Dispositional Order.

■ Iowa Code section 232.103 (1999) governs the termination of a dispositional order in a CINA case prior to its expiration. *See In re Guardianship of Murphy,* 397 N.W.2d 686, 689 (Iowa 1986); *In re H.J.E.,* 359 N.W.2d 471, 474 (Iowa 1984); *In re G.R.,* 348 N.W.2d 627, 630 (Iowa 1984). The specific section that governs termination and release of a child is section 232.103(4), which states

The court may terminate an order and release the child *if* the court finds that the purposes of the order have been accomplished *and* the child is no longer in need of supervision, care or treatment.

Iowa Code § 232.103(4) (emphasis added). Thus, a juvenile court is authorized to terminate a dispositional order only if "the purposes of the [dispositional] order have been accomplished and the child is no longer in need of supervision, care, or treatment." *H.G.,* 601 N.W.2d at 86 (citation omitted); *In re R.G.,* 450 N.W.2d 823, 825 (Iowa 1990).

■ In this case, the juvenile court did not make the requisite statutory findings prior to dismissing the case. To the contrary, the reasons articulated by the court for dismissing the action were in direct contravention to the mandates of section 232.103(4). The court essentially admitted the purposes of the original dispositional order had not been accomplished. In addition, in noting K.N. still remained "at

risk," the court recognized K.N. was still in need of supervision, care, and treatment. Furthermore, the court noted that the services it had offered the children kept them safe at times and that the children responded well to placement at times.

Although we have not before considered the authority of the juvenile court to dismiss a CINA petition in the context of this case, we have consistently observed that a juvenile court may not terminate CINA adjudication status unless the purposes of the original dispositional order have been fulfilled and "the child is 'no longer in need of supervision, care or treatment.'" *A.B. v. M.B.*, 569 N.W.2d 103, 107 (Iowa 1997) (citation omitted); *see H.G.*, 601 N.W.2d at 86; *R.G.*, 450 N.W.2d at 825. Under the statutory standard applicable to this case, dismissal was improper. *See R.G.*, 450 N.W.2d at 825; *Guardianship of Murphy*, 397 N.W.2d at 689.

■ The State advances two arguments in support of its position urging us to uphold the juvenile court's decision. First, the State argues section 232.103(4) cannot be applied to this case because K.N. was a runaway at the time of the proceedings and not within the jurisdiction of the juvenile court. Second, the State asserts dismissal was appropriate under the inherent powers of the court because no relief was available until K.N. was found, and a new CINA petition could be filed in the future.

■ Although K.N. may not have been within the jurisdictional borders of the state at the time of the review hearing, her absence would not deprive the court of its jurisdiction over her person. The law is clear that "once a court obtains jurisdiction over a person and the subject matter of a case, it retains jurisdiction until a final disposition has been made." *H.G.*, 601 N.W.2d at 86 (citing *Jensen v. Jensen*, 260 Iowa 371, 377, 147 N.W.2d 612, 616 (1967)).

■ We recognize courts have some degree of inherent authority to ensure the orderly, efficient, and fair administration of justice. *City of Sun Prairie v. Davis*, 226 Wis.2d 738, 595 N.W.2d 635, 641 (1999). However, this authority may not necessarily extend to the dismissal of a case. *See Motz v. Motz*, 207 N.W.2d 580, 581 (Iowa 1973); *see also Metz v. Amoco Oil Co.*, 581 N.W.2d 597, 600–01 (Iowa 1998) (Lavorato, J., dissenting). Moreover, any inherent authority to dismiss a case could not be exercised to circumvent the expressed legislative policies woven into the law. The role of courts is only to interpret statutes, not second-guess the underlying policies. *See State v. Carpenter*, 616 N.W.2d 540, 542 (Iowa 2000); *Allen v. Iowa Dist. Ct.*, 582 N.W.2d 506, 509 (Iowa 1998); *H & Z Vending v. Iowa Dep't of Inspections & Appeals*, 511 N.W.2d 397, 398 (Iowa 1994). When a statute authorizes the dismissal of an action, the grounds delineated in that statute are controlling. 27 C.J.S. *Dismissal and Nonsuit* § 49, at 276 (1999).

■ The legislature provided specific guidelines for construing chapter 232 in enacting the juvenile justice code. *In re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984); *G.R.*, 348 N.W.2d at 631. Each child within the juvenile court's jurisdiction must receive "the care, guidance and control that will best serve the child's welfare and the best interest of the state." Iowa Code § 232.1 (the rule of construction for chapter 232). The purpose of the juvenile process in general has always been to care for, educate, and train the children adjudged in need of assistance, not to punish them. *In re Henderson*, 199 N.W.2d 111, 117 (Iowa 1972); *see G.R.*, 348 N.W.2d at 631; *State v. Visser*, 249 Iowa 763, 764, 88 N.W.2d 925, 926 (1958). Thus, the legislature clearly expressed the underlying policy of chapter 232 to be "[t]he welfare and

best interests of the children." *J.R.H.*, 358 N.W.2d at 317; *see H.G.*, 601 N.W.2d at 87–88; *In re Welcher*, 243 N.W.2d 841, 843 (Iowa 1976); *In re C.D.*, 509 N.W.2d 509, 511 (Iowa Ct.App.1993). Additionally, once a child is placed outside the home, the policy of the law generally requires that reasonable efforts be made to safely return a child home or to consider permanency. *See* Iowa Code § 232.102(7), (10).

We have also observed that it is the State's duty, as parens patriae, to ensure that the aims of the juvenile justice code are applied to each child in need of the code's assistance. *See Welcher*, 243 N.W.2d at 843–44. We believe the law unequivocally expresses the policy that no child should be left behind. Nevertheless, the State, as well as the parents, suggest that the policy of the state can be best achieved by permitting courts to dismiss cases which are proceeding on a dead-end path so that the limited resources of the state can be put to better use on families which have a better chance of success. This position, however, implies that some families are more deserving of the services provided under chapter 232 than others. Not only is this contradictory to the policies of our juvenile system, it also creates a potential situation where the courts and DHS are permitted to hand pick families for services. We find no legislative support in our statutes for such a policy.

We conclude that a juvenile court can only dismiss a CINA action prior to expiration if the grounds specified in section 232.103(4) are present. *See H.G.*, 601

N.W.2d at 86. The legislature did not carve out any exceptions to this termination provision, and section 232.103(4) is the only means of terminating a dispositional order in a CINA proceeding before expiration. Moreover, juvenile courts have no inherent authority to dismiss a CINA action when such authority would contravene the clearly spoken policy of the law.

We recognize the job of the juvenile court can be extremely difficult, and, at times, frustrating. This frustration is clearly compounded when the resources devoted to one family over a significant period of time seem to result in no improvement, while other needy families remain on a waiting list for those same services. At the same time, the rewards that can result from the intervention by the juvenile court can be immeasurable. Unfortunately, the measure of success too often comes in very small increments, and, at times, is almost imperceptible. Yet, success cannot always be measured from day-to-day or even year-to-year, and it may not be until long after the court's intervention is complete, and the child has grown into an adult, that the caring hand of those judges and service workers begins to be felt, and success may be found. Our system recognizes this, and it inheres in the mandate of section 232.104.[1]

The law provides for a variety of options in this case, but dismissal is not one of them. We remand the case to the juvenile court to consider other dispositions short of dismissal.

---

1. Because the guardian ad litem did not appeal the dismissal of the CINA action with respect to J.P., this opinion applies only to K.N. However, if the guardian ad litem had contested the dismissal of J.P.'s CINA status, J.P. would be subjected to the same disposition, even though J.P. will turn eighteen years old on April 29, 2001. "Although the legislature specifically conferred [CINA] jurisdiction on the juvenile court by using the age ... of a child at the time the proceeding is initiated, it did not utilize [this] factor as grounds to subsequently terminate the proceeding...." *H.G.*, 601 N.W.2d at 86. However, the juvenile court is permitted to consider the age of a child in determining what type of disposition would serve the child's best interests. *Id.* at 87.

## IV. Conclusion.

We conclude the juvenile court relied upon inappropriate criteria in dismissing the CINA actions. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**