# IN THE COURT OF APPEALS OF IOWA

No. 14-1853
Filed February 11, 2015

IN THE INTEREST OF B.C.,
     Minor Child,

B.C., Minor Child,
     Appellant,

S.C., Mother,
     Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark Fowler, District Associate Judge.


A mother and son appeal the child in need of assistance adjudication. **AFFIRMED.**

Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, for appellant-mother.

Timothy J. Tupper of Tupper Law Firm, Davenport, for appellant-minor child.

Jennifer M.T. Olsen of Olsen Law Firm, Davenport, for intervenor.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Michael J. Walton, County Attorney, and Julie Walton, Assistant County Attorney, for appellee.

Dana L. Copell of Law Office of Dana L. Copell, Davenport, for father.

Jean Capdevila, Davenport, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, J.**

A mother and son,[1] B.C., appeal the child in need of assistance (CINA) adjudication by the juvenile court. The mother and son both claim the court lacked jurisdiction over B.C. The mother claims the court did not rely on clear and convincing evidence in adjudicating B.C. a CINA. Upon our de novo review, we find the court had jurisdiction over B.C. and relied upon clear and convincing evidence in finding B.C. was a CINA. We affirm.

## I. BACKGROUND FACTS AND PROCEEDINGS

A mother appeals from the order adjudicating her child, B.C., a CINA.[2] Our court first dealt with this family in *In re B.C.*, 845 N.W.2d 77 (Iowa Ct. App. 2014). We incorporate the background statement from that opinion:

> Prior to the birth of B.C., the mother lived within the Quad Cities, moving frequently between Iowa and Illinois, essentially transient. At the time, the mother had three other children living in Iowa who were the subjects of child in need of assistance (CINA) petitions. Two or three months before the birth of B.C., the mother moved in with the maternal grandmother in Rock Island, Illinois. In January 2013, B.C. was born in an Illinois hospital. Two days later, the Iowa Juvenile Court in Scott County entered an order for temporary removal. The Iowa Department of Human Services (DHS) removed B.C. directly from the Illinois hospital and placed him with an Iowa foster family, where he has remained throughout this case. In its "ex parte application/affidavit for temporary removal," the petitioner State of Iowa stated, "DHS contacted DCFS in Illinois and Illinois has agreed to honor am [sic] Ex–Parte issued by the State of Iowa and allow Iowa to assume jurisdiction of the child."

*Id.* at 79–80. "Because the child was not present in the State of Iowa and had never been present in the State of Iowa, the juvenile court did not have temporary emergency jurisdiction pursuant to Iowa Code section 598B.204(1)

---

[1] The guardian ad litem does not join in this appeal.
[2] The father does not appeal.

(2013) to enter a removal order." *Id.* at 80. We reversed and remanded for an order dismissing the petition to terminate parental rights, the CINA petition, and the removal application.

Immediately after our opinion, the State sought another ex parte order of removal and filed another CINA petition. After the State filed a motion for determination of jurisdiction, the juvenile court found jurisdiction under the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA), Iowa Code chapter 598B. B.C. was adjudicated a CINA pursuant to Iowa Code section 232.2(6)(b), (c)(2), (g), and (n). During the pendency of these proceedings, B.C. remained in Iowa DHS custody placed in foster family care. B.C. did not return to Illinois. Following the dispositional order filed on October 17, 2014, both the mother and child appealed.

## II.    STANDARD OF REVIEW

We review questions of subject matter jurisdiction de novo under the UCCJEA, enacted as Iowa Code chapter 598B. *Id.* at 79. Our review of an action arising from CINA proceedings is de novo. *In re K.B.*, 753 N.W.2d 14, 14 (Iowa 2008). Of paramount concern is the welfare and best interest of the child. *In re C.L.B.*, 528 N.W.2d 669, 670 (Iowa Ct. App. 1995). We review the record to determine whether the finding of child in need of assistance is supported by clear and convincing evidence. Iowa Code § 232.96(2). We give weight to the juvenile court's findings, but we are not bound by them. *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). We will affirm the ruling of the lower court if one ground,

properly urged, exists to support the decision. *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995).

## III. ANALYSIS

### A. Jurisdiction

The mother and child both claim the Iowa juvenile court lacked jurisdiction under the UCCJEA to enter any order. In response, the State claims the Iowa juvenile court had jurisdiction over B.C. pursuant to the temporary emergency jurisdiction provision in Iowa code section 598B.204(1),[3] and under three grounds codified in Iowa Code section 598B.201(1)(b)–(d),[4] which authorizes the juvenile court to exercise jurisdiction when a home state declines jurisdiction.

---

[3] Iowa Code 598B.204(1) provides:
> A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

[4] Iowa Code 598B.201(1)(b)–(d) provides:
> 1. Except as otherwise provided in section 598B.204, a court of this state has jurisdiction to make an initial child-custody determination only if any of the following applies:
>
> b. A court of another state does not have jurisdiction under paragraph "a", or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 598B.207 or 598B.208 and both of the following apply:
>
> (1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
>
> (2) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.
>
> c. All courts having jurisdiction under paragraph "a" or "b" have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 598B.207 or 598B.208.
>
> d. No court of any other state would have jurisdiction under the criteria specified in paragraph "a", "b", or "c".

We find the Iowa juvenile court had jurisdiction over B.C. pursuant to section 598B.201(1)(b)–(d). Both the Iowa and Illinois courts found Illinois was an improper forum and Illinois declined to exercise jurisdiction. We agree with the juvenile court's reasoning on why jurisdiction is proper in Iowa under section 598B.201(1)(b)–(d):

> Looking back to the time of birth, [Illinois] Judge Peter Church has now ruled that Illinois is and was an inconvenient forum pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act (Iowa Code Section 598B.207). Pursuant to 598B.201(1)(b)(c) and (d) a court of the child's home state has declined to exercise jurisdiction on the ground that Iowa is the more appropriate forum. However that doesn't end the inquiry for the Iowa Court. This Court must determine that the family members have sufficient connection to Iowa other than mere presence, substantial evidence exists in Iowa concerning the child's protection, care, training and personal relationships, and that no other State would have jurisdiction or has already declined jurisdiction. There is ample evidence in this case to assert jurisdiction in Iowa pursuant to 598B.201(1). Iowa and Illinois are the only States with possible jurisdiction and Illinois has declined jurisdiction for the many reasons stated above. B.C.'s parents and B.C. have a significant connection to Iowa. His full sibling and father live in Iowa. His half siblings live in Iowa. His mother lived in Iowa up until two months before he was born. All of the family has been involved in Juvenile Court in Iowa over a year before he was born. Both parents received DHS services for the siblings and themselves in Iowa during that same time frame and since his birth. The father has other past and present CINA actions in Iowa. Both parents have founded abuse reports on the siblings in Iowa. The mother's psychological evaluation and parenting skill information is in Iowa. The family members had no service connection in Illinois with the exception of a founded child abuse report and failed ICPC Report. Services were never provided to the family by the State of Illinois. All the information concerning B.C.'s care, his family's rehabilitative needs, his parents' ability to protect him, and ability to keep him safe, is in Iowa.

**B.  CINA**

The mother claims the State failed to prove by clear and convincing evidence B.C. was a CINA. The State claims the juvenile court properly found

B.C. would be subjected to imminent harm if he was returned to his mother's custody. Upon our de novo review, we find the record supports the grounds relied on by the juvenile court in adjudicating B.C. a CINA. Since we need only to find one ground supported by the record, we focus our analysis on section 232.2(6)(b).

Section 232.2(6)(b) provides a CINA is an unmarried child "[w]hose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." Upon our review of the record we find multiple grounds demonstrate that B.C. is a CINA within the definition of section 232.2(6)(b). These grounds include: the mother's history of mental health problems, association with criminals, unstable and unsafe housing, inability to care for herself, inability to meet her son's basic needs, lack of income, and the previous adjudication of the mother's other three children. Clearly, B.C. would be imminently likely to suffer harm if he was returned to his mother's care. It is in the best interests of B.C. he remain in foster care. For these reasons, we affirm the judgment of the juvenile court.

**AFFIRMED.**