# IN THE COURT OF APPEALS OF IOWA

No. 15-0228
Filed July 9, 2015

**IN THE INTEREST OF D.M., G.M., AND N.M.,**
**Minor Children,**

**A.S., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Warren County, Mark F. Schlenker, Judge.

The mother appeals the juvenile court's dispositional order placing her children in foster care, rather than in her care. **AFFIRMED.**

Andrea Flanagan of Sporer & Flanagan, P.L.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, John Criswell, County Attorney, and Tracie L. Sehnert, Assistant County Attorney, for appellee State.

M. Kathryn Miller of the Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child D.M.

William E. Sales of Sales Law Firm, P.C., Des Moines, attorney and guardian ad litem for minor children G.M. and N.M.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, P.J.**

The mother appeals the juvenile court's dispositional order placing the children, D.M., G.M., and N.M., in foster care. She asserts the court improperly denied her request the children be placed in her custody. She further argues the State failed to make reasonable efforts to reunite her with the children. We conclude the State made reasonable efforts to avoid the out-of-home placement; furthermore, the mother's unresolved mental health and substance abuse issues support the juvenile court's conclusion the children should not be placed in her care. Consequently, we affirm the court's decree placing the children in foster care.

D.M., born July 1999, G.M., born May 2009, and N.M., born April 2010,[1] came to the attention of the Iowa Department of Human Services (DHS) in October 2014.[2] The mother was arrested in Iowa and jailed in Missouri for failure to pay child support for her three other children, who reside with their father. The children were removed from her care on October 7 and were adjudicated in need of assistance by a dispositional order filed November 24, 2014. The mother was incarcerated for forty-five days and was released on December 10, 2014. She is still in arrears, and the issue remains unresolved. The mother has previously served in the Marine Corps, and she is currently seeking employment as a bus driver for Ankeny schools, though this work is seasonal.

---

[1] D.M.'s father resides in California. He was represented by counsel but did not contest the foster-care placement. G.M. and N.M.'s father is deceased.
[2] The children were first removed from the home in 2011 due to allegations D.M. was the primary caretaker for the younger children. DHS was involved with the family for fourteen months as part of this case.

The mother has acknowledged an informal diagnosis of borderline personality disorder. She testified she is in counseling to address this issue. She also suffers from substance abuse issues, specifically with regard to her abuse of marijuana.[3] The juvenile court noted that, while previous drug screenings were negative, she was only recently released from jail and therefore has not demonstrated consistent sobriety outside of this controlled setting. She has been high while parenting the children, including while driving them, and has offered D.M. marijuana. The mother denied these allegations, and stated she was given a substance abuse evaluation and no treatment was recommended. She also suffers from an inner-ear condition, which she stated she treats with marijuana.

Additionally, the mother has a history of unstable housing. Over the past several years, she has lived in many different residences, one of which was a camper. She moved between states often, and came to Iowa in April 2014. Upon her release from jail in Missouri, the mother obtained an apartment; following a home visit, DHS found the housing to be adequate.

Prior to the children's removal, the mother often relied on D.M. to care for the younger children. She would be gone for long periods of time, including overnight, and D.M. feels it is her responsibility to care for the children.[4] The mother stated she considered this babysitting; however, the juvenile court noted

---

[3] The mother stated the last time she used marijuana was October 15, 2014, and that she uses it to treat her inner-ear disease.

[4] D.M. expressed excitement and relief at being placed in a foster home, as it would provide stable housing and relieve her of the responsibility of caring for the younger children. However, the DHS report to the court noted she still has difficulty interacting with her younger siblings, given she is no longer considered the primary caretaker.

that, "having heard the evidence [the Court] finds the care given these children by [D.M.] to have been more than mere 'babysitting' as it has included overnight care . . . . She has been given responsibilities by her mother inappropriate for her age."

Following her release from jail, the mother had two supervised visits each week with the children, which lasted two hours. The DHS case management plan stated the visits would be moved to semi-supervised and increased to five times each week beginning in March 2015.[5] Other services provided to the mother include: family safety, risk, and permanency services; substance abuse and mental health evaluations and counseling; family counseling; and supervised visitation.

A contested hearing with regard to the children's removal was held on January 8, 2015, in which the mother requested the children be placed in her care. On January 26, the juvenile court issued an order finding the children should be placed in foster care, as the mother's issues preventing her from properly caring for the children still existed. The mother appeals.

We review child-in-need-of-assistance proceedings de novo. *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). Although we give weight to the juvenile court's factual findings, we are not bound by them. *Id.* Our primary concern is the best interests of the children. *Id.*

The mother disputes the juvenile court's conclusion the children should not be placed in her care; however, we do not agree. As the court noted:

_____

[5] We note a review/permanency hearing was set for March 25, 2015.

The conditions which gave rise to this case, as set forth in the Petition, continue to be unresolved in that the mother continues to lack stable housing, which prevents her from safely independently parenting her children. She has only recently acquired a residence in Prole, Warren County, Iowa, which she rented December 18, 2014, after her release from jail December 10, 2014. She has a significant record of instability in her residences, including numerous residences in Polk County, Iowa, Warren County, Iowa, in Wisconsin, and in a camper.

. . . .

Placement outside the parental home is necessary because continued placement in or a return to the home would be contrary to the children's welfare due to ongoing parenting and a lack of a stable and suitable home environment. The mother has had substance abuse issues for which she has not yet proven have been resolved.

The record supports this assessment. While the mother does currently have a residence, her past instability indicates it is unlikely she will maintain consistent housing. Moreover, her mental health and substance abuse issues remain unresolved. When considering the parent's possible future conduct, her past conduct is instructive. *See In re L.L.*, 459 N.W.2d 489, 494 (Iowa 1990). Given the mother's history of unstable housing and severe substance abuse issues, we agree with the juvenile court the children could be exposed to harm were they to be returned to the mother's care. Therefore, it is in the children's best interests to remain out of her care and in foster care. *See generally id.* (noting: "The goal of our statutory scheme is to prevent probable harm to the child; our statutes do not require delay until after the harm has happened . . . they are preventative as well as remedial").

The mother also argues the State failed to make reasonable efforts to avoid the out-of-home placement, particularly when DHS failed to increase the amount and duration of her visits. We agree with the mother that the removal of

the children triggered a statutory duty on the part of DHS to make reasonable efforts to reunify the family. *See* Iowa Code §§ 232.96(10)(a), 232.102(7). Reasonable efforts often include visitation. *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). Nonetheless, we conclude the State fulfilled this duty. As our supreme court has noted:

> Visitation . . . cannot be considered in a vacuum. It is only one element in what is often a comprehensive, interdependent approach to reunification. If services directed at removing the risk or danger responsible for a limited visitation scheme have failed its objective, increased visitation would most likely not be in the child's best interests.

*Id.* The mother has been provided consistent visitation with the children. However, the circumstances that led to the removal still exist—the possibility of the mother returning to jail, her unstable housing, and her unresolved substance abuse and mental health issues. Consequently, we agree with the juvenile court's finding that reasonable efforts had been made so the children could remain in the mother's care; nonetheless, placement in a foster home was "the least restrictive . . . [and] is appropriate under the circumstances."

For these reasons, we affirm the juvenile court's placement of D.M., G.M., and N.M. in foster care, with visitation to remain at the discretion of DHS.

**AFFIRMED.**