## IN THE COURT OF APPEALS OF IOWA

No. 18-1505
Filed November 7, 2018

**IN THE INTEREST OF M.T.,**
**Minor Child,**

**B.M., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Keokuk County, Daniel Kitchen, District Associate Judge.

A mother appeals the juvenile court orders adjudicating the child as in need of assistance and placing the child outside her home. **AFFIRMED.**

Katie Mitchell of Mitchell Law Office, PLC, Washington, for appellant mother.

Amber L. Thompson, Sigourney, for father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Katie E.M. Lujan of Lloyd, McConnell, Davis & Lujan, L.L.P., Washington, guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

A mother seeks reversal or modification of juvenile court orders adjudicating her child as in need of assistance (CINA) and removing the child from the mother's care. We conclude the evidence supports the CINA adjudication and we affirm the dispositional order of the juvenile court.

## I. Background Facts & Proceedings

B.M., mother, and Ma.T., father, are the parents of M.T., born in 2009. B.M. is married to R.M., and they have a child together, L.M. M.T. resided with the mother B.M. and R.M., the stepfather.

On or about November 1, 2017, M.T. sustained injuries on the right ear and neck which the child described as cuts. However, medical personnel later determined the injuries could be burns, but they were not cuts. M.T. attributed the injuries to intentional actions by the stepfather with a "shiny object." The Iowa Department of Human Services (DHS) investigated the reported injury on November 4 and removed the child from the home. The child was placed with the father, and the court ordered visitation with the mother and a no-contact order with the stepfather.

DHS filed a "founded" child-abuse assessment in December, concluding the stepfather was responsible for physical abuse to M.T. The mother continued to live with the stepfather, and denied he caused any harm to M.T. The mother and stepfather did not provide a credible alternate explanation for the injuries to M.T.'s ear and neck. The stepfather sometimes acted in a hostile manner toward law enforcement, DHS, and Family Safety, Risk, and Permanency (FSRP) workers—sending accusatory text messages, taking pictures of the workers and their

vehicles, forbidding access to the house at times, and monitoring the time and place of visitations between the mother and the child. Throughout the proceedings, the mother and stepfather exhibited a volatile relationship; for example, splitting up in February, getting back together in March, calling in law enforcement during fights in April, and discussing no-contact orders one day and driving together for visitation the next.

On April 26, 2018, the court adjudicated M.T. as a CINA pursuant to Iowa Code section 232.2(6)(b) and (c)(2) (2017). The following weekend, the mother called law enforcement multiple times about the stepfather's mental-health issues and threatening behaviors, including suicide attempts, locking himself in with the younger child, and chasing the mother and L.M. down the street. The mother continued to stay with and support the stepfather, though he did not comply with any of the recommendations necessary for the mother to regain custody of M.T. In July, the stepfather came to the house where he knew the mother was having visitation with M.T. The mother kept the stepfather away from the child, but he took her phone and was knowingly there when he was not supposed to be. The mother's brother was present and called FSRP at the mother's request to report the stepfather's actions.

Following a dispositional hearing on June 8 and July 20, the court again found clear and convincing evidence M.T. could not remain in the mother's home and should remain adjudicated CINA, continued the placement with Ma.T., ordered visitation for the mother at the discretion of DHS, and continued the no-contact order between the child and stepfather. The mother appeals.

## II.     Standard of Review

"We review CINA proceedings de novo."  *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).  "While we are not bound by the juvenile court's factual findings we accord them weight."  *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017).  "CINA determinations must be based upon clear and convincing evidence."  *Id.* at 41; *see* Iowa Code § 232.96(2), (8).  Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence.  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  The fundamental concern in juvenile proceedings is the best interests of the child.  *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001).

## III.     Merits

The mother claims the court erred in adjudicating M.T. as CINA because the State did not provide clear and convincing evidence the child was physically abused by a household member or was imminently likely to be abused.  The mother claims her protective capabilities will ensure the stepfather is not left alone with and will not act as caretaker for the child.  The mother also claims the court erred in not returning M.T. to her care at the dispositional hearing on July 20 because the stepfather would continue to be incarcerated for at least one month.

To adjudicate M.T. as CINA pursuant to section 232.2(b), the State must show a parent or member of the household where the child resides has physically abused or neglected the child, or is imminently likely to do so.  Iowa Code § 232.2(6)(b).  A finding of past abuse or neglect under paragraph (b) requires a physical injury.  *See J.S.*, 846 N.W.2d at 41.  A CINA adjudication under paragraph (c)(2) requires the State to show the parent or a member of the household failed

to supervise the child to a reasonable degree of care, and the child has suffered or is imminently likely to suffer harmful effects. Iowa Code § 232.2(6)(c)(2). Harmful effects can be established "when there was harm to a child's physical, mental, or social well-being or such harm [i]s imminently likely to occur." *J.S.*, 846 N.W.2d at 41–42. Continued contact with a party known to present a danger to persons in the home who refuses to cooperate with services can provide a sufficient basis for a CINA adjudication. *See L.H.*, 904 N.W.2d at 153–54.

The child had injuries to the ear and neck the mother and stepfather could not adequately explain. The child consistently maintained the stepfather caused the ear and neck injuries through interviews with the father, grandparents, law enforcement, DHS, medical personnel, and a child protection center evaluation. DHS found sufficient evidence to issue a founded abuse report. The child stated the stepfather did not engage in the abusive behaviors when the mother was present, and only did so when angry. Throughout the proceedings, the mother consistently refused to believe the child regarding the stepfather's behavior, despite subsequent behaviors by him prompting her to call for law enforcement to get into her house to retrieve her younger child, the stepfather chasing her down the street, and his interference in her visitation with M.T. We find the State presented clear and convincing evidence to support the CINA adjudication.

As of the June hearing, the mother and stepfather were still living together and sharing a phone. The DHS worker testified the safety concerns for the child stemmed from the actions and presence of the stepfather. His behavioral problems throughout the CINA proceedings escalated and included suicide attempts and chasing the mother down the street. The stepfather testified in June

at the dispositional hearing, alternately denying, justifying, and otherwise mischaracterizing his behaviors.

The stepfather was taken into custody sometime between the two days of the dispositional hearing, and he was in custody on the second day of the hearing.[1] While the record indicates he will not reside in the same house as the mother in the future, he was granted visitation with the child he shares with the mother and expressly stated he would refuse any agreement or condition restricting his contact with the mother and anticipated dropping by the house and encountering B.M. in the community. We find the dispositional order placing M.T. with the father is necessary to protect the child from exposure to the stepfather and the harmful effects risked by that exposure.

We find it is in M.T.'s best interests to remain adjudicated CINA pursuant to Iowa Code section 232.2 and to continue to be placed with the father.

**AFFIRMED.**

---

[1] The length of time R.M. was expected to be in custody was not specified in the record, but the mother's brief indicated it might only have been one additional month after the hearing.