# IN THE COURT OF APPEALS OF IOWA

No. 19-0470
Filed June 19, 2019

**IN THE INTEREST OF K.P., K.P., J.P., K.P., J.P., K.P., J.P., and K.P.,
Minor Children,**

**K.P., Mother,**
        Appellant,

**B.S., Father of K.P.,**
        Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic,

District Associate Judge.

A mother and the father of one of her children appeal the juvenile court's

removal order in a child-in-need-of-assistance proceeding. **REVERSED IN PART**

**AND REMANDED.**

Elizabeth A. Batey of Vickers Law Office, Greene, for appellant mother.

Danielle M. Ellingson of Eggert, Erb, Kuehner & DeBower, P.L.C., Charles

City, for appellant father of K.P.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Cameron Sprecher of Prichard Law Office, PC, Charles City, for appellee

father J.B.

Cynthia S. Schuknecht of Noah, Smith & Schuknect, P.L.C., Charles City,

attorney and guardian ad litem for minor children.

Considered by Vogel, C.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

A mother and the father of one of her children appeal the juvenile court's removal order in a child-in-need-of-assistance (CINA) proceeding. We find there is not clear and convincing evidence supporting removal of the children. We reverse the district court's removal of all the children from the mother's custody, and removal of the youngest child from her father's custody.

## I.     Background Facts & Proceedings

K.P. is the mother of eight children: K.P., born in 2004; K.P., born in 2005; J.P., born in 2006; J.P., born in 2008; K.P., born in 2013; J.P., born in 2014; K.P., born in 2015; and K.P., born in 2017. J.B. (the father) is the father of the seven older children and legal father to the youngest child. B.S. is biological father to the youngest child.

Over the course of 2018, ten different child protective services investigations were initiated; all ten were unconfirmed. By the last report at the beginning of November, the Iowa Department of Human Service (DHS) placed the children at "a high level of risk." The allegations involve multiple children, and included abuse, use of dangerous substances around the children, denial of critical care, and failure to supervise the children. The mother and her paramour, B.S., began voluntary participation in a family services program in mid-2018. The father moved to Texas for several months in 2018, leaving all the children in the mother's care.

In August 2018, the police were called for a domestic violence incident between the mother and B.S., and DHS was notified as the actions occurred while the youngest child was present. The mother accused B.S. of hitting her, throwing

objects, punching holes in her walls, and abusing controlled substances and alcohol. B.S. accused the mother of scratching him and stated he was the person who called the police. A no-contact order was put in place between the mother and B.S., but they dropped it in November. B.S. was living in the home again with the mother and children from November 2018 until February 2019. The mother and B.S. ended their relationship at the beginning of February, and B.S. moved in with his parents.

Once the father returned to Iowa, the oldest child moved in with him full-time. The second-oldest lived with the mother. The next five children split their time between the parents' homes. The oldest identified B.S. as a major reason to not return to the mother's house. The second oldest said the time the others were at the father's home was a chance to have a break from taking care of the younger siblings. The youngest child lived with the mother and B.S., then split time between the mother's home and B.S.'s home after they separated.

Three of the children are hearing impaired and use cochlear implants. One of them attends a resident program at the Iowa School for the Deaf during the week. All three were frequently sent to school and daycare without one or both implants before DHS involvement. The father appeared to be better at maintaining the implants for the children. Reports show the children's learning is hindered when they do not have the necessary implants at school.

The mother, father, and B.S. do not co-parent effectively, and all three have complained to DHS about the others. DHS described the situation among the mother, the father, and B.S. as "chaos." A no-contact order is in place between the mother and father. In November 2018, the mother pleaded guilty to domestic

assault, second offense, against the father. A separate domestic assault charge relating to B.S. was dropped at that time.

On February 15, 2019, the court adjudicated all eight children as CINA pursuant to Iowa Code section 232.2(6)(c)(2) (2019). DHS and the guardian ad litem recommended the parents share custody of the children. The court noted concerns of domestic violence in the presence of the children, allegations of physical abuse and drug use in the home, and the mother's failure to meet the children's medical needs. The court required DHS approval of other adults in the home, ordered the parents and their household members to submit to alcohol and drug testing as directed, prohibited persons under the influence of alcohol or drugs around the children, directed the mother to complete a domestic abuse program, the mother to attend individual therapy, ordered B.S. to have no contact with any child but the youngest, and required the parents ensure the children's medical needs are met and the cochlear implants are worn at all times as directed.

On March 14, a dispositional hearing was held. The State and the guardian ad litem supported following DHS's recommendation the parents continue to share custody. The DHS report noted two of the older children were taking care of their siblings often and the hearing-impaired children did not consistently wear their cochlear implants while in the mother's care. The mother said she was attending mental-health therapy and had completed a substance-abuse evaluation, though no records were submitted. The father requested placement of the children in his care, testifying at the hearing the oldest child reported abuse in the mother's home. All eight children were removed from the mother's custody, and the youngest child

was removed from B.S.'s custody. The court found the following circumstances supported removal:

> Mother, [B.S.] and [B.S.]'s household members unresolved substance abuse issues, history of violence and abuse in the home in the presence of the children, failure of Mother to meet the essential needs of the children—particularly failure to make sure that the children who need them have their implants available to allow them to hear, conflictual relationships between parents, lack of compliance with Court orders for services, lack of progress since case initiation, lack of proper supervision of the children, Mother's frequent absences from the home, and conflictual relationships between the oldest children and parents.

In particular, the court sought to prevent the older children from being placed in a caretaker or parent role with the younger siblings. The seven older children were placed in their father's custody. The court ordered four of the children to participate in therapy. The youngest child was placed in foster care. B.S. is not allowed contact with the seven older children. The court again ordered all adult household members of the parents to submit to drug testing.

The mother and B.S. appeal the removals. The father supports the court order, and the State offers no argument on appeal.

## II. Standard of Review

Our review in CINA proceedings is de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *Id.* "We review both the facts and the law, and we adjudicate rights anew." *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). "As in all juvenile proceedings, our fundamental concern is the best interests of the child[ren]." *Id.*

### III. Analysis

The court may remove a child from home when it determines by clear and convincing evidence "that continuation of the child in the child's home would be contrary to the welfare of the child." Iowa Code § 232.102(6)(b). The court is to "make the least restrictive disposition appropriate considering all the circumstances of the case." *Id.* § 232.99(4).

The mother and B.S. both claim compliance with the recommendations in the district court's adjudication order to the extent possible. The mother submitted a summary of services from the worker who had been visiting the family since April 2018. The worker specifically noted the mother had been participating in services and was working on improving her parenting abilities. DHS reported the mother had begun mental-health therapy. The mother and B.S. were no longer involved at the time of the hearing, and that relationship had been the source of many of the court's concerns. The DHS report noted B.S. claimed to have completed a substance-abuse evaluation and DHS was awaiting the report and any related drug testing. DHS was also waiting on paperwork from the adults in B.S.'s household before arranging any drug testing. B.S. complied with the order to avoid the other seven children.

Upon our review of the record at the time of the dispositional hearing, we find there is not clear and convincing evidence supporting removal of the children. The guardian ad litem, DHS, and the State did not recommend the removal, nor does the State support it on appeal. We reverse the juvenile court's removal of the children from the mother's custody and the youngest child from B.S.'s custody.

We leave the remaining provisions of the dispositional order in place and remand for further proceedings.

**REVERSED IN PART AND REMANDED.**