**IN THE COURT OF APPEALS OF IOWA**

No. 20-0330
Filed July 1, 2020

**IN THE INTEREST OF D.D.,**
**Minor Child,**

**E.D., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Des Moines County, Emily Dean,

District Associate Judge.

        The father of D.D. appeals the dismissal of this child-in-need-of-assistance

proceeding. **AFFIRMED.**

        Trent A. Henkelvig, Danville, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Diana L. Miller of Whitfield & Eddy, P.L.C., Mt. Pleasant, attorney for the

minor child.

        Patrick Brau of Brau Law Office, Mt. Pleasant, guardian ad litem for minor

child.

        Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**BOWER, Chief Judge.**

The father of D.D. appeals the termination of this child-in-need-of-assistance (CINA) proceeding.

D.D. was adjudicated CINA in April 2018 upon a report of sexual abuse by D.D.'s stepfather.  D.D. and half-siblings were removed from the home.  The family received services from the Iowa Department of Human Services (DHS); Family Safety, Risk, and Permanency (FSRP) providers; and individual and family therapists.

A May 29, 2019 permanency order was filed in which the juvenile court found:

> All four of the children have verbalized a desire to return to their mother's home as soon as possible.  The court is tasked with reunification of the children with their mother and also ensuring the children are supervised, cared for, and protected from further abuse by their step-father or another individual.  The court finds that with an additional six months of individual therapy, family therapy, FSRP services, and parenting skills being provided to the family that the within children may be safety returned to the custody of their mother.

D.D. returned to the mother's custody in July 2019 and services continued.

In November 2019, following a review hearing, the mother's husband was allowed to return to the family home.  Services continued and the threat of maltreatment continued to be monitored by DHS and FSRP.

On February 6, 2020, a DHS report to the court noted D.D. continued to attend individual counseling.  The counselor reported D.D. can tell her mom "if there are any uncomfortable situations at home, but she has not experienced anything thus far."  The DHS report concluded: "This family has had a year of services including family and individual counseling.  This has been a long and difficult road for the family and all involved.  The family has put the work in to

reunify. This worker recommends that the CINA be dismissed for [D.D.]" The State requested the CINA case be dismissed and the child's guardian ad litem agreed.

A review hearing was held on February 11. The State requested the CINA proceedings be dismissed. In the order of dismissal filed that date the court noted, "All parties stipulate to dismissal with the exception of [E.D.], father of [D.D.], who requests his child remain adjudicated a [CINA]."[1] The court found, "[T]here are no further safety concerns for any of the children in the mother's custody and that dismissal of this matter is appropriate and in the children's best interest."

E.D. appeals, the child's attorney has filed a brief in support of the court's ruling, in which the State joins.

Our review in CINA proceedings is de novo. *See In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). We examine both the facts and the law, and we adjudicate anew issues properly preserved and presented for appellate review. *See In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001).

A juvenile court may terminate a dispositional order only if the court determines "[t]he purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment" or "[t]he purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted." Iowa Code § 232.103(4)(a), (d) (2018); *accord K.N.*, 625 N.W.2d at 733.

E.D. asserts the evidence presented does not show that the mother has achieved the dispositional goal to obtain a safe and stable home free of any

---

[1] E.D. was incarcerated throughout these proceedings.

potential abuse of the children.  The dispositional order of June 12, 2018, included

these concerns:

> The court finds that the significant issues in this matter involve the sexual abuse of the children [D.D.] and [sibling], the mother not believing the abuse occurred, and the mother failing to protect her children from sexual abuse or any harm.  Other concerns involve the mother's lack of a safe and stable home, extensive hygiene issues in the home, continual lice infestations of the children, and the lack of basic parenting skills and supervision of the children by the mother.  The court is very concerned at this time regarding the mother's protective capabilities of all children and continual victimization of [D.D.] for reporting the abuse occurring in the home.  The court cannot return any child to the mother's custody unless it is convinced that the mother, through her participation in services, can and will protect her children from abuse and harm in the future, improve her parenting, and provide for their basic needs.

The May 29, 2019 permanency order included these findings:

> That problems addressed in the case permanency plan, made a part of the latest dispositional order, have been solved within the deadlines given with the following exceptions: the children's mother needs to address her parenting skills and protective capacities of the within children, demonstrate an ability to provide and care for all of the children and their needs, ensure the children are protected and free of abuse, identify potential safety concerns of the children, openly discuss with the children their feelings regarding the abuse that occurred in the home, ensure the children are safe and comfortable within the home, establish a plan for the children to be returned safely to her care, ensure the within children have no contact with [her husband], and demonstrate an appropriate response to any concerns of the children regarding any sexual abuse, physical abuse, or safety concerns in the home.

> On July 11, 2019, the juvenile court modified the dispositional order and

transferred custody of the children to the mother.  The court noted:

> That since the time of the last hearing, the children's mother and her husband, [J.K.], have been participating in counseling and therapy.  The children have also been participating in counseling.  The mother and [DHS] have established a plan where the mother's husband, [J.K.], will leave the home to ensure the children will be safe in the mother's care with continued counseling and therapy being provided to the family.

The father of [D.D.], [E.D.], through his attorney, objects to his child being returned to the mother's custody due to the court's previous finding of abuse of his child by the mother's husband. [The DHS social worker] testified that the children are very bonded with each other, and it will not be in the best interest of [D.D.] to place her separately from her siblings. Furthermore, the children have been very adamant of wanting to return to the mother's custody, and although this is not a "tipping point" for a decision by the court, the court does take into consideration the position of the children due to their respective ages.

[The social worker] also testified that [D.D.]'s counselor is aware of the recommendations for return to the mother's custody and is in agreement with said recommendation. Furthermore, through counseling and therapy, the children have learned protective capacities, and spot checks will be implemented while the children are in the home. The court finds that the plan for reunification established by [DHS], the service providers, the children's mother, and the children's counselors is appropriate and in the best interest at this time.

In its November 21, 2019 review order, the court observed,

Since the last hearing, the family continues to participate with the [DHS], FSRP services, and counseling. The children's counselor reports she has no safety concerns for the family and the children report they are comfortable and ready for [J.K.] to return to the family home.

Reviewing the progression of the CINA proceedings, and the juvenile court's most recent finding that "there are no further safety concerns for any of the children in the mother's custody and that dismissal of this matter is appropriate and in the children's best interest," we conclude the purposes of the dispositional order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted. We therefore affirm the dismissal of the CINA proceedings.

**AFFIRMED.**

Doyle, J., concurs; Schumacher, J. dissents.

**SCHUMACHER, Judge** (dissenting).

Is a child victim of sexual abuse safe in a home where her caretakers are the perpetrator and the child's mother who refuses to believe the sexual abuse occurred? I respectfully dissent from the majority opinion that affirms the dismissal of the child in need of assistance (CINA) proceedings.

Forensic interviews conducted in early March 2018 with D.D., born in 2010; H.H., born in 2009; Z.H, born in 2007; and H.T.H., born in 2004; resulted in a founded child abuse assessment naming D.D.'s stepfather as a perpetrator of sexual abuse in the third degree. D.D., age seven at the time of the interview, reported to the interviewer that her stepfather was having sexual intercourse with herself and her eight-year-old sister, H.H.[2] The children initially remained with their mother, but the State later sought removal based on the mother's instructions to the children to not disclose any information about the sexual abuse and the allowance of contact between her husband and the children.

A removal order was subsequently entered on April 13, 2018, and on May 23, 2018, the children were adjudicated to be CINA pursuant to Iowa Code section 232.2(6)(c)(2) (2018), to wit: "[w]ho has suffered or is imminently likely to suffer harmful effects as a result" of "[t]he failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child," and 232.2(6)(d), to wit: "[w]ho has been, or is imminently likely to be, sexually abused by the child's parent, guardian, custodian, or other member of the household in which the child resides."

---

[2] The youngest child, C.K., born in 2013, was not interviewed. C.K. is the only biological child of the mother's husband.

The juvenile court determined in its written adjudication order that D.D.'s forensic interview was credible. The juvenile court further noted that the mother told the children that she did not believe them and told them to not disclose information regarding the sexual abuse. Following adjudication, the children remained placed out of parental custody. The children were placed with relatives until it was discovered that the second relative placement was allowing unsupervised contact. The school also reported D.D.'s deterioration, including completely shutting down and self-harming behaviors, such as biting her arms. D.D.'s siblings blamed her for the removal. The children were placed in foster care, with D.D. placed in a foster home separate from her siblings.

A dispositional order was entered on June 12, 2018. The court's order noted that D.D.'s stepfather had bonded out of jail on sexual abuse criminal charges and was residing with the mother. In part, the dispositional order contained the following findings:

> The Court finds that the significant issues in this matter involve sexual abuse of the children [D.D.] and [H.H.], the mother not believing the abuse occurred, and the mother failing to protect her children from sexual abuse or any harm. Other concerns involve the mother's lack of a safe and stable home, extensive hygiene issues in the home, continual lice infestations of the children, and the lack of basic parenting skills and supervision of the children by the mother. The court is very concerned at this time regarding the mother's protective capabilities of all children and continued victimization of [D.D.] for reporting the abuse occurring in the home. The court cannot return any child to the mother's custody unless it is convinced that the mother, through participation in services, can and will protect the children from abuse and harm in the future, improve her parenting, and provide for their basic needs.

In a review order filed March 8, 2019, the court made specific findings that therapy and counseling for the children had not been provided by the department on a consistent basis and were only initiated after specific order of the court

entered in June 2018. The court noted in the review order that the children's mother and her husband had been participating in counseling; however, it was unclear whether the mother's counseling had addressed how to deal with her daughter's fears and pain due to the sexual abuse of D.D. and the mother's open disbelief of D.D.'s reports.

The court added that it was also not clear that the stepfather had addressed with his therapist the accusations of his stepchildren that he was a sexual perpetrator. The court found that it was clear that the current therapist for the mother's husband had very little knowledge as to why the mother's husband was in therapy. Further, the court noted concerns regarding the mother's approach to the allegations, as she had previously insisted the sexual abuse had never occurred, had influenced the children to recant their versions of events, and had previously allowed contact between the children and her husband after a safety plan was entered. The court concluded that very little progress had been made and that reasonable efforts had not been provided to the family for reunification.

A permanency hearing was held on May 23, 2019. Following the hearing, the juvenile court found that the problems addressed in the case permanency plan had been resolved within the deadlines given, with the following exceptions:

> [T]he children's mother needs to address her parenting skills and protective capacities of the within children, demonstrate an ability to provide and care for all of the children and their needs, ensure the children are protected and free of abuse, identify potential safety concerns of the children, openly discuss with the children their feelings regarding the abuse that occurred in the home, ensure the children are safe and comfortable within the home, establish a plan for the children to be returned safely to her care, ensure the within children have no contact with [her husband], and demonstrate an appropriate response to any concerns of the children regarding any sexual abuse, physical abuse, or safety concerns in the home.

The court granted the family an additional six months for reunification pursuant to Iowa Code section 232.104(2)(b) and specifically found that termination of the mother's rights would not be in the children's best interests at the time of the permanency order.

Approximately one month after the entry of the permanency order, the State moved to set a hearing for possible modification of placement, as the department was recommending that the children be returned to their mother. On July 11, 2019, a modification of the dispositional order was entered, returning the children to the custody of their mother, subject to mother's husband removing himself from the family home. The mother was also ordered to ensure the children had no contact with her husband except during counseling and therapy sessions and to ensure that her husband was not in the family home. Four months after the entry of this order, the stepfather moved back in the family home with the mother and the children. On February 11, 2020, following a review hearing, the family's CINA proceedings were dismissed with the consent of all parties except D.D.'s father.[3]

The final Family Safety, Risk, and Permanency (FSRP) services plan, filed January 23, 2020, noted concerns from the school on December 12, 2019, regarding suicidal comments made by D.D. That report noted with regard to D.D., the only child subject to this appeal, that because of her age and size, she would be unable to self-protect, and the mother and stepfather were not talking about the allegations and had not confirmed or denied the same.

As noted by the majority, a juvenile court may terminate a dispositional order if, among other things, the court determines "[t]he purposes of the order have

---

[3] A transcript of this hearing is not included in the record.

been accomplished and the child is no longer in need of supervision, care, or treatment" or "[t]he purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted." Iowa Code § 232.103(4)(a), (d); *accord In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001).

Given the founded sexual abuse report against the stepfather, the perpetrator's residence again in the family home, and the record before us, I respectfully disagree that D.D. is no longer in need of supervision, care, or treatment.[4] While D.D.'s response to the petition on appeal references that the criminal charge against the stepfather was dismissed by the State, the underlying CINA proceedings were based, at least in part, on a founded sexual abuse report completed by the department following forensic interviews of four of the children. The named perpetrator, D.D.'s stepfather, is now residing in the same home as D.D. As delineated by the juvenile court, the permanency goal was reunification with the mother. Such goal may be accomplished without reintroduction of the perpetrator into the family home. Therefore, for the above reasons, I respectfully dissent from the majority opinion affirming dismissal of the CINA proceedings.

---

[4] Family reunification should occur when an in-home safety plan is sufficient, feasible and sustainable. A case should be dismissed when sufficient information supports the judgment that threats of danger are now absent, parents have sufficient protective capacities, or both. Donald Duquette and Ann M. Haralambie, *Child Welfare Law and Practice: Representing Children, Parents, and State Agencies in Abuse, Neglect, and Dependency Cases*, 316 (2010).