# IN THE COURT OF APPEALS OF IOWA

No. 20-0878
Filed September 23, 2020

**IN THE INTEREST OF J.H.,**
**Minor Child,**

**W.S., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.

        A father appeals the juvenile court order transferring jurisdiction to the probate court. **AFFIRMED.**

        Eric A. Checketts, Glenwood, for appellant father.

        Thomas J. Miller, Attorney General, and Toby J. Gordon, Assistant Attorney General, for appellee State.

        Roberta J. Megel of the State Public Defender's Office, Council Bluffs, attorney for guardian C.M.

        Marti D. Nerenstone, Council Bluffs, attorney and guardian ad litem for minor child.

        Considered by Bower, C.J., Doyle, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VOGEL, Senior Judge.**

The father of J.H., born in 2009, appeals the child-in-need-of-assistance (CINA) review order, which terminated the juvenile court's jurisdiction and transferred jurisdiction to the probate court for the establishment of a guardianship for J.H. Because the father withdrew his participation in the proceedings and J.H. is thriving in the home of C.M.[1] with her two half-siblings, we affirm.

J.H. came to the attention of the Iowa Department of Human Services (DHS) in November 2019 on the report of violence in the home between her mother and C.M., and again ten days later after her mother abandoned J.H. and her two younger half-siblings. All three children were removed and soon placed with the half-siblings' aunt and uncle, where they remained for several months. In April 2020, after C.M. successfully participated in reunification services, he was granted custody of his two children along with J.H. All three children remained in his care for the remainder of these proceedings. A telephonic hearing was held on June 8, after which the juvenile court ordered the custody of J.H. "remain with [C.M.] pursuant to" the guardianship established in the probate case. The court further ordered the termination of the juvenile court's jurisdiction. The father appeals.

We review CINA proceedings de novo. *In re K.B.*, 753 N.W.2d 14, 15 (Iowa 2008). In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight. *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). Our primary concern is the child's best interests. *In re J.S.*, 846 N.W.2d

---

[1] C.M. is the biological father of the two half-siblings. All three children have the same biological mother.

36, 40 (Iowa 2014). CINA determinations must be based upon clear and convincing evidence. Iowa Code § 232.96(2) (2020).

At the time of removal, the father's whereabouts were unknown. He was soon located in the state of Virginia where he had been living for several years. He participated telephonically in the January 8, 2020 CINA adjudicatory hearing. Although he had not seen or had contact with J.H. since she was two months old, he requested a home study be conducted on his home in Virginia pursuant to the Interstate Compact on the Placement of Children (ICPC), which the court then ordered. A caseworker with the Virginia Department of Social Services (DSS) worked on the ICPC process from Virginia. After an initial home visit with the father, the Virginia caseworker attempted to contact the father several times by phone, leaving a voicemail and several text messages. Finally on March 19, the father contacted the worker and stated he no longer wished to move forward with the home study. In response, on March 24 the worker sent the father a letter memorializing the situation and informing him his case was closed with the DSS. The worker included his full name, office address, email address, and phone number should the father need additional information. The ICPC status was relayed back to the Iowa DHS worker.

On April 23, C.M. requested a "Bridge Order and Guardianship" hearing be set. The juvenile court then set the requested hearing for June 8 to coincide with a previously set CINA review hearing. On April 30, all parties—including the father—agreed to a "Waiver of Notice of Hearing, Waiver of Hearing, Consent to Entry of Order." With the waivers on file, the juvenile court then ordered J.H. (and the other children) be placed with C.M.

But on May 9, the father sought to reengage in the case by moving to have the June 8 hearing on the proposed guardianship continued, claiming a "misunderstanding and miscommunication with the Virginia [caseworker]." After reviewing the motion and the resistances filed by the State and by C.M., the juvenile court denied the motion.

The father asserts the State failed to present clear and convincing evidence that reasonable reunification efforts were employed and, therefore, transferring jurisdiction to probate court was unwarranted. The father acknowledged he had no contact with J.H. since she was two months old but blamed others for keeping him out of J.H.'s life for the past ten years.

At the June 8 hearing, the father testified he "didn't even know [J.H.] was placed with [C.M.] until after [C.M.] told [him]. No letters, no e-mails, no nothing." However, on cross-examination he was read some correspondence from his attorney to the other attorneys in the case that stated, "I just spoke with my client. We are in agreement with" signing the April 30 waiver. After the close of the evidence, the father's attorney made a professional statement that he explained the situation to the father and had his consent to proceed with the April 30 waiver. The juvenile court accepted the attorney's statement and found, "After hearing the testimony and looking over the documents, I think that there was a valid waiver of these children into [C.M.'s] care, custody, and control."

In addition, the correspondence from the Virginia caseworker to the Iowa caseworker detailing his interaction with the father was admitted into evidence. Also admitted was the letter from the Virginia caseworker to the father that stated in part:

> On Friday, March 19, 2020, you made contact with [this] case worker and stated that you no longer wanted to move forward with the home study process due to not being able to keep taking time off from work.
>
> Today, this letter is to notify you that your case has been closed with [the DSS] at this time.
>
> Please contact me if additional information is needed at [phone number and email address].

The father made no attempt to contact this worker to follow up with "additional information."  During direct examination at the hearing, the father was asked if he told the Virginia caseworker he wanted to cancel the home study, and the father answered, "Yes because I couldn't afford to keep missing work if he wasn't going to show up."  Yet the Virginia caseworker provided no indication of any scheduling difficulty or missed appointment time, instead mentioning only noncompliance by the father after multiple attempts by the worker to contact him.  The juvenile court found:

> As of March, [the father] was more than well aware this matter was—had been canceled, and he should have sought at that time to reinitiate an ICPC but waited until shortly before this hearing.
>
> I think that he put himself in the position that he's in and that ICPC not getting completed.  I do not think that it is appropriate to wait further at this time.  I believe the [Virginia caseworker's] letter written out in March was ample opportunity.  A new one should have been started, but he didn't do that.

Moreover, it was not just the father's halting the home study that shed doubt on his commitment to establishing a relationship and parenting J.H. but also his inconsistent efforts to maintain phone contact with J.H.  DHS was assisting J.H. with weekly phone calls, but the father began missing calls around January 2020 and completely stopped the calls in March.  Ultimately, the juvenile court concurred with DHS's conclusion that the father was simply too inconsistent in his attempts to rebuild his relationship with J.H. and concluded, "I'm going to grant the

guardianship of [J.H.] with [C.M.].  [The father's] recourse will be in [probate] court under the court's jurisdiction of that guardianship."  Such authority is a proper resolution under Iowa Code section 232.104(2)(d)(1) (authorizing the juvenile court to "[t]ransfer guardianship and custody of the child to a suitable person" after a permanency hearing).

Next, the father briefly mentions that it is not in J.H.'s best interests to have jurisdiction transferred to the probate court.  As DHS reported, J.H. "thinks of [C.M.] as her dad."  Further, the DHS worker testified J.H. is bonded to her half-siblings, wants to stay with them and with C.M., and is thriving in C.M.'s home.  Upon our de novo review, we agree with the juvenile court's transfer of jurisdiction to allow the probate court to handle this case under its jurisdiction.

**AFFIRMED.**