**IN THE COURT OF APPEALS OF IOWA**

No. 21-0820
Filed August 18, 2021

**IN THE INTEREST OF B.M.,**
**Minor Child,**

**S.M., Father,**
     Appellant,

**N.H., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

The mother and father appeal the juvenile court's adjudicatory and dispositional orders in this child-in-need-of-assistance proceeding. **AFFIRMED ON BOTH APPEALS.**

Judith O'Donohoe of Elwood, O'Donohoe, Braun & White, LLP, Charles City, for appellant father.

Nellie O'Mara of Prichard Law Office, Charles City, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Cynthia Schuknecht of Noah, Smith & Schuknecht, PLC, Charles City, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

The parents of this child had an older child, X.M. X.M. had no health concerns until August 3, 2019. On that date, when the mother left for work, the child was reportedly fine and the father remained at home with the child. A few hours later, the father took X.M. to the Charles City hospital because the child was in and out of consciousness with breathing problems. The child was life-flighted to the Mayo Clinic in Rochester, Minnesota.

At both hospitals, the father reported being unaware of any unusual events that could have caused the child's breathing problems. He repeated these denials to a law enforcement officer questioning him about the injuries. Law enforcement became involved because examination of X.M. revealed skull fractures, retinal hemorrhaging, and brain damage. Medical personnel at the Mayo Clinic concluded the injuries were caused by non-accidental trauma consistent with abuse.

Finally, after several hours of questioning, during which the father denied any knowledge of what could have caused X.M.'s injuries, the father told the investigating officer that he was walking with the child and fell in the kitchen, hitting the counter and then falling with his full body weight on the child. The father reported no injuries from the fall, and he returned the child to the child's bassinet for several hours before noticing the breathing problems and taking the child to the hospital.

X.M. died the next day from the injuries. The State charged the father with first-degree murder and child endangerment resulting in death. The charges

remain pending.  The father was released from custody after posting bail.  His conditions of release include a prohibition on him having contact with children.

In spite of the suspicious circumstances surrounding X.M.'s death and the criminal charges against the father, both the mother and father maintain X.M.'s death was accidental.  In August 2020, B.M. was born.  Due to concerns for the safety of the newborn child in light of X.M.'s death, the authorities intervened and child-in-need-of-assistance (CINA) proceedings were started.  Following a contested hearing, the juvenile court adjudicated B.M. to be in need of assistance pursuant to Iowa Code section 232.2(6)(b)[1] and (c)(2)[2] (2020).  At the dispositional hearing that followed adjudication, the child was placed in the mother's custody subject to supervision by the Iowa Department of Human Services (DHS).  Both parents appeal.

"We review child-in-need-of-assistance proceedings de novo."  *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021).  "We review the facts and the law and 'adjudicate rights anew.'"  *Id.* (quoting *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001)).  We are not bound by the juvenile court's factual findings, but we give them weight.  *Id.*  "The paramount consideration in child-in-need-of-assistance proceedings is protecting the best interests of the child[]."  *Id.*

---

[1] Iowa Code section 232.2(6)(b) defines a child in need of assistance to include a child "[w]hose parent . . . has physically abused or neglected the child, or is imminently likely to abuse or neglect the child."
[2] Section 232.2(6)(c)(2) defines a child in need of assistance to include a child "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child."

While both parents challenge adjudication, neither parent advances any factual or legal arguments that the grounds for adjudication were not established. As a result, we deem any challenge to the grounds for adjudication to be waived. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (recognizing the rule that the appellant must identify alleged error and "[a] broad, all encompassing argument is insufficient to identify error in cases of de novo review"); *Hyler v. Garner*, 548 N.W.2d 864, 876 (1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments."); *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume."); *cf.* Iowa R. App. P. 6.903(2)(g)(3) (requiring arguments in briefs to contain reasoning, citations to authorities, and references to pertinent parts of the record).

Rather than challenging the statutory grounds, the father appears to fight adjudication by focusing on whether the juvenile court's aid was required. *See* Iowa Code § 232.96(8) (requiring the juvenile court to decline to adjudicate and to dismiss the CINA petition "if the court concludes that its aid is not required in the circumstances"). The father asserts that the conditions of his pretrial release in his criminal case, which prohibit contact with the child, were sufficient safeguards such that CINA adjudication was not needed. Like the juvenile court, we disagree. The safety of this child should not be subjected to the uncertainty of the twists and turns that may occur in the father's criminal case. Besides the fact the conditions of release are subject to change with little notice to the DHS or the juvenile court,

given the more stringent burden of proof in the criminal case, it is possible the charges may be dismissed or the father may be acquitted, which would result in the cancellation of the conditions of release and thus leave the child unprotected regardless of whether the evidence shows the child remains in need of protection. Further, juvenile court involvement through CINA adjudication provides a much more child-focused protection for the child than the conditions of release in the criminal case. As a practical matter, there is little reason to believe anyone is directly and proactively monitoring the father's or the mother's compliance with the no-contact provisions of the conditions of release in the criminal case. In contrast, with the CINA adjudication, there are people given the specific task of monitoring compliance with the orders prohibiting contact between the father and the child. The juvenile court was correct to conclude its aid was required.

The focus of the mother's challenge to adjudication is that she has adequate parenting skills, so there should not have been an adjudication. This misses the mark for several reasons. First, the grounds for adjudication set forth in section 232.2(6)(b) and 232.2(6)(c)(2) are set forth in the singular, requiring only a showing that the child's parent—not parents—engaged in the described inadequate parenting. Other provisions of chapter 232 confirm a CINA adjudication may be entered or continued "as a result of the acts or omissions *of one* or both parents." *See* Iowa Code §§ 232.116(1)(d)(1), (1)(i)(1), 232.117(5) (emphasis added). The father's danger to the child is sufficient by itself to warrant adjudication irrespective of the mother's parenting ability.

Second, while the mother's basic parenting skills are unquestioned, her refusal to acknowledge any wrongdoing by the father and her expressed desire to

return to life as normal with the father in the house as soon as any conditions imposed in the father's criminal case or in this CINA proceeding are removed create serious safety concerns. While the mother has been compliant with the juvenile court's orders to date, the mother has made it very clear that, if the restrictions imposed by the orders were removed, such as would occur if this CINA proceeding were dismissed, she would not hesitate to allow the father back into the home. We will not subject the child to this risk. *See D.D.*, 955 N.W.2d at 193 ("It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists.").

For the foregoing reasons, we reject both parents' challenges to the adjudication. As for the challenges to disposition, we reject the father's challenge for several reasons. First, he acknowledges that he "is not appealing any of the Court's dispositions as to him." As a result, we deem him to have waived any challenges to disposition. Second, to the extent he is challenging the disposition on the mother's behalf, he does not have standing to do so. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (holding the father does not have standing to assert arguments on behalf of the mother in an effort to ultimately gain a benefit for himself). Finally, the father's argument is built on a faulty premise—that the children have been removed from the mother's care. As previously noted, following the dispositional hearing, the juvenile court returned the child to the mother's care subject to DHS supervision designed to make sure the child is safeguarded from the father. As the child has not been removed, the father's challenge fails.

The mother's challenge to disposition focuses on her strong parenting skills and the fact the parents have been following the juvenile court's orders requiring the father to stay away from the child. As previously noted, no one is challenging the mother's parenting skills, except for her refusal to acknowledge the risk the father poses. The mother's refusal to acknowledge that risk warrants continued juvenile court involvement. The fact the parents are abiding by the terms of the juvenile court's orders is not compelling. The orders are in place to protect the child, so the fact the parents are following the orders does not warrant canceling them. If the parents obtained the relief they seek on this appeal, the CINA petition would be dismissed and there would be no juvenile court orders for them to follow. If that were to occur, the child would be subject to the very same risk that necessitates juvenile court involvement in the first place, which is a dangerous father coupled with a mother who refuses to acknowledge the danger. With no juvenile court involvement, we have little to no doubt the mother would permit the father to have access to the child if and when the restrictions imposed by the criminal case release conditions are removed. The belt-and-suspenders approach of juvenile court supervision on top of the current restrictions imposed in the criminal case is warranted given the grave danger the father poses.

On our de novo review, we reach the same conclusions reached by the juvenile court. Grounds for adjudication have been established. Placing the child in the mother's custody with DHS supervision and prohibitions on the father having contact with the child is an appropriate disposition at this time.

**AFFIRMED ON BOTH APPEALS.**