# IN THE COURT OF APPEALS OF IOWA

No. 24-1659
Filed January 9, 2025

**IN THE INTEREST OF J.B.,**
**Minor Child,**

**M.B., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, Judge.

A mother appeals the juvenile court's order terminating her parental rights to her son. **AFFIRMED.**

Brian P. Donnelly of Mayer, Lonergan and Rolfes, Clinton, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Jean Capdevila, Davenport, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

The mother, M.B., appeals the juvenile court's order terminating her parental rights to her son, J.B.[1] We affirm.

## I. Background Facts and Proceedings

The child was born in May 2023. The child had negative urine tests at birth, but blood testing revealed the child had been exposed to amphetamine and methamphetamine sometime in utero. The mother denied she had used methamphetamine during her pregnancy, but a subsequent positive drug test for methamphetamine and amphetamine and her history of heavy methamphetamine use suggest otherwise.[2] The juvenile court found her not credible on this claim.

The Iowa Department of Health and Human Services (HHS) wanted to start a voluntary case to provide a safety plan for the child while the mother received sobriety services. HHS believed she had simply relapsed sometime during pregnancy based on the negative urine test on the day of delivery and the maternal grandmother's claim that she saw no signs of use during the mother's pregnancy.

The mother failed to respond to HHS's repeated attempts to facilitate those services. The child was then removed from the home in June 2023. The mother tested positive for methamphetamine, amphetamine, and cocaine in July 2023. She again denied ever using illegal substances. She also attended none of HHS's eighteen subsequent random tests—despite many of those tests being scheduled

---

[1] The father's rights were also terminated but he does not appeal.
[2] In 2022, the mother admitted to police that she was a daily methamphetamine user after they executed a search warrant at her home and found methamphetamine paraphernalia. Both of her older children living with her at that time now reside with other individuals.

at her home to accommodate transportation and work issues. Instead, the mother intermittently provided her own drug tests. The child was adjudicated a child in need of assistance in August 2023.

The mother's employment status is unclear. At one point she worked at Carpet Land but claimed she was fired because the termination hearing took too long. The juvenile court noted that the hearing had been scheduled for the full day. HHS has not been permitted to enter her home. The mother claimed she did not realize until the day of the termination hearing that HHS wanted to see her home. She admitted that it is unsafe for the child due to it currently being "remodeled."

The mother failed to consistently participate in Family Centered Services (FCS) despite FCS employees trying to schedule services many times. After eventually getting sessions scheduled, she only sometimes attended. She has not attended an FCS session since March 2024.

She also has not participated in substance use treatment despite being ordered to do so in November 2023. She claims her appointments keep getting cancelled, which the juvenile court noted "is entirely possible, [but] it is hard to believe she couldn't get an evaluation at that facility for months when they complete hundreds of evaluations each month at their Davenport facility." After HHS suggested Rosecrance, a less busy facility, the mother claimed to have secured an appointment. Yet when contacted by HHS, Rosecrance stated that the mother had not contacted them since 2022.

Despite a recommendation for mental-health treatment for over a year, no participation has been documented. Court funds were released to pay the cost of a psychological evaluation. While the mother told HHS and a FCS employee she

had appointments, the juvenile court found that was untrue. She finally made an appointment in May 2024 and left after an hour despite being told it was a four-hour appointment. When HHS had last checked she never finished the evaluation. The mother testified she finished the evaluation in June 2024.

As the district court summarized:

> For over a year HHS has offered substance abuse treatment, drug testing, mental health referrals, a free psychological evaluation, frequent supervised visitation, and parenting instruction. The mother has been offered transportation when requested. She was offered entry into Family Wellness Court early in the case but could not enter until she started treatment, which she did not do. When workers made appointments to meet her at her home, she usually cancelled, moved them to another place, or simply wasn't home. She has intentionally not made herself available for drug testing, even when it was provided at her home. [The mother] flat out lied to [the HHS case worker] about receiving drug treatment services from Rosecrance—she had not had contact with that facility since 2022, and her individual mental health treatment was never confirmed by [the mental health provider] . . . .

The court ultimately terminated the mother's parental rights to the child under Iowa Code section 232.116(1)(d) and (h) (2023).

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). We give weight to the juvenile court's factual findings but are not bound by them. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The paramount concern is the children's best interests. *L.T.*, 924 N.W.2d at 529.

## III. Discussion

### A. Grounds for Termination

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find

supported by the record." *In re A.B.,* 815 N.W.2d 764, 774 (Iowa 2012). Failure to challenge termination under any ground for the termination waives "any claim of error related to [that ground]." *In re K.K.*, 16-0151, 2016 WL 1129330, at *1 (Iowa Ct. App. Mar. 23, 2016) (citing *Hyler v. Garner,* 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal." (alteration in original)).

Although the mother's parental rights were terminated under both paragraphs (d) and (h) of section 232.116, the mother's petition on appeal only discusses paragraph (d)—she does not challenge the termination of her parental rights under Iowa Code section 232.116(1)(h). She has thus waived this ground and we affirm termination of her parental rights under section 232.116(1)(h).

### B. Best Interests of the Child

"As in all juvenile proceedings, our fundamental concern is the best interests of the child." *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). "Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted). "We 'give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *Id.* (quoting Iowa Code § 232.116(2)). It is well established that we will not "deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* (citation omitted).

The mother's sole argument on this point is her recitation of a general concern for the parent-child relationship, citing no particular facts or argument relating to her bond with the child in this case: "The mother believes that the best interest of the child is to be returned to her, and that there is no current clear and convincing evidence to refute her position."

We disagree. The mother has failed to address her substance use or mental health, failed to participate in drug testing, failed to engage in FCS, and, per her testimony, failed to provide a safe home for the child. In its thoughtful and well-reasoned order, the district court stated the following:

> The guardian ad litem recommends termination of parental rights. [The child] is fully integrated into his foster home and identifies them as his family. While he seems to enjoy time spent with his mother and recognizes her as a person in his life, he does not appear to have a mother/son bond with her or show distress when being separated from her. On the other hand, [the child] is clearly bonded to his foster parents. This has been observed by his guardian ad litem and his [court Appointed Special Advocates]. The foster family has been his family throughout the duration of this case.

We agree that termination is in the child's best interests.

**C. Conclusion**

We affirm the district court's termination of the mother's rights.

**AFFIRMED.**